15 F.3d 1519
 89 Ed. Law Rep. 449, 4 A.D.D. 33
 UNION SCHOOL DISTRICT, Plaintiff-Appellant,
v.
B. SMITH, defendants 2-7 Under Seal, Defendants-Appellees.
UNION SCHOOL DISTRICT, Plaintiff,
v.
B. SMITH, defendants 2-7 Under Seal, Defendants-Appellees,
and
California Department of Education, California
Superintendent of Public Instruction, Bill Honig,
Defendants-Appellants.
 Nos. 91-16546, 91-16595.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 12, 1993.
Decided Feb. 1, 1994.
 
 Keith L. Slenkovich, Saratoga, California, for plaintiff-appellant Union School District.
 Joyce O. Eckrem, Deputy General Counsel, California Department of Education, for State defendants-appellants.
 Kathryn E. Dobel, Berkeley, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: POOLE, FERGUSON, and FERNANDEZ, Circuit Judges.
 FERGUSON, Circuit Judge:
 
 
 1
 This case concerns the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Sec. 1400 et seq., which guarantees handicapped children a free appropriate public education. Union School District ("District") appeals the district court's entry of summary judgment awarding reimbursement of expenses to a family who placed their handicapped child, Bernard Smith, in a private counseling facility after the District failed to offer Bernard a free appropriate public education. The California Department of Education ("CDE") also appeals, on narrower grounds, disputing the power of the district court to award a family reimbursement to maintain a second lodging so that Bernard could live within daily commuting distance of a non-residential education program.
 
 I.
 A.
 
 2
 The District argues that the district court's entry of summary judgment for the Smiths was improper. In the District Court, the parties filed cross motions for summary judgment, anticipating that the court would base its decision on a review of the exhaustive administrative record. No party indicated that it wished to introduce further evidence. See 20 U.S.C. Sec. 1415(e)(2) ("the court ... shall hear additional evidence at the request of a party") (emphasis added).
 
 
 3
 Notwithstanding this procedural posture, the District argues that there are disputed issues of material fact that render summary judgment improper. Specifically, the District points to the following factual disputes: 1) whether the District's convening of an Individualized Education Program ("IEP") meeting in September 1989 served as an acknowledgment that it was responsible for Bernard's education in the fall of 1989, and 2) whether the District's failure to make a formal offer of a placement for Bernard at the McKinnon school means that McKinnon cannot be considered in deciding whether the District offered a free appropriate public education.
 
 
 4
 These questions concern the legal significance of undisputed facts. When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate. See W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 475-80 (1983).
 
 
 5
 There are no disputed underlying facts. The District does not argue that the September IEP meetings did not occur, nor does it argue that it formally offered the McKinnon school as a placement for Bernard. We agree with the District that the district court erred in finding that the District admitted responsibility for Bernard's education by conducting an IEP meeting in September of 1989. We affirm the district court's legal conclusion, however, that Bernard's residence was within the District on other grounds. We also affirm the district court's legal conclusion that the District cannot be considered to have offered McKinnon as a placement for Bernard.
 
 
 6
 The only other issue that the District even implicitly raised as a purported factual dispute involved the Smiths' withholding from the District of portions of a report issued by Dr. Bryna Siegel. The Smiths admit to withholding portions of the report that may have been relevant to the appropriateness of a placement at Carlton. This withholding is of no consequence, however, because the District formally offered Bernard a placement at Carlton. It is undisputed that the Smiths showed the District the pages in which Dr. Siegel diagnosed autism. The District points to nothing in the withheld portions of the report that might have influenced its decision formally to offer Bernard a placement at McKinnon. The District was aware that Bernard was diagnosed with autism. Its decision not to offer McKinnon formally as a placement was based on its beliefs that Bernard resided outside the District, and that the Smiths would not accept a placement there.
 
 
 7
 Furthermore, the District was legally obligated to procure its own report from a specialist such as Dr. Siegel. The District must make "a full and individual evaluation of the child's educational needs," 34 C.F.R. Sec. 300.531, and must "ensure ... [that the] evaluation [of the student] is made by a multidisciplinary team ... including at least one teacher or other specialist with knowledge in the area of suspected disability" (i.e., a specialist in autism). 34 C.F.R. Sec. 300.532(e). Any failure of the Smiths to turn over portions of a specialist's report cannot excuse the District's failure to procure the same information for itself. See W.G. v. Board of Trustees, 960 F.2d 1479, 1484-85 (9th Cir.1992) (parents' failure to secure participation of the child's school at an IEP meeting, even though promised by the parents, does not excuse the school district's obligation under the IDEA to secure such participation).
 
 
 8
 Because we find no factual dispute precluding summary judgment, we proceed to resolve this case on its legal merits.
 
 B.
 
 9
 We review de novo the appropriateness of an education program. Gregory K. v. Longview School Dist., 811 F.2d 1307, 1310 (9th Cir.1987). We, like the district court, however, "must give 'due weight' to judgments of education policy when [we] review state hearings.... [C]ourts should not substitute their own notions of sound educational policy for those of the school authorities which they review." Longview, 811 F.2d at 1311 (internal quotation and citations omitted). The extent of deference to be given is within our discretion. Id.
 
 
 10
 We give deference to the administrative findings of the Hearing Officer particularly when, as here, they are thorough and careful. See, e.g., Longview, 811 F.2d at 1310-11; W.G., 960 F.2d at 1483; accord Hendrick Hudson Cent. Sch. Dist. Bd. of Ed. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). We also accord deference to the policy decisions of a school district when it is acting within the bounds of federal and state law. See Wilson v. Marana Unified School Dist., 735 F.2d 1178, 1183-84 (9th Cir.1984); accord Rowley, 458 U.S. at 207-08, 102 S.Ct. at 3051.
 
 II.
 
 11
 IDEA, 20 U.S.C. 1400 et seq., assures all handicapped children a free appropriate public education. See 20 U.S.C. Secs. 1400(c), 1412(1). Judicial review of state Hearing Officers' decisions under IDEA involves two steps. First, the court must determine whether the rigorous procedural requirements of IDEA have been met. Second, the court must determine whether the state has met the substantive component of IDEA--the requirement that the state provide an "appropriate" education. Rowley, 458 U.S. at 206-07, 102 S.Ct. at 3050-51.
 
 
 12
 "An 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child.... The states are obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.' " Longview, 811 F.2d at 1314, quoting Rowley, 458 U.S. at 201, 102 S.Ct. at 3048.
 
 
 13
 If a parent believes that a school district has failed to offer a free appropriate public education, parents may place an eligible child in an appropriate private program. "Parents have an equitable right to reimbursement for the cost of providing an appropriate [private] education when a school district has failed to offer a child a [free appropriate public education]." W.G., 960 F.2d at 1485 (citing Burlington School Comm. v. Department of Educ., 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985)).
 
 
 14
 State standards that impose a greater duty to educate handicapped children, if they are not inconsistent with federal standards, are enforceable in federal court under IDEA. See W.G., 960 F.2d at 1483; see also 20 U.S.C. Secs. 1401(a)(18), 1412(6); 34 C.F.R. Sec. 300.4.
 
 III.
 
 15
 The District argues at great length that the school district in which the child lives during the school week is the district responsible for the child's special education. The District argues that, because Bernard resided in Los Angeles during the school week while attending the Clinic, the District was not responsible for reimbursing the Smiths for the costs of Bernard's education at the Clinic. To support this contention, the District points to various provisions of the California Education Code addressing a school district's responsibility to disabled children who reside within the district. We find that those provisions in no way excuse a school district's responsibility to disabled children residing within the district who receive their free appropriate education in a placement outside the district. See, e.g., Taylor v. Honig, 910 F.2d 627 (9th Cir.1990) (requiring a school district to pay for a disabled child's placement in a residential program outside the district).
 
 
 16
 As the Hearing Officer and the district court found, the Smiths maintained their permanent residence in San Jose where they paid taxes and where Bernard's father continued his medical practice. They temporarily maintained a second residence in Los Angeles for the sole purpose of being able to commute daily to an appropriate non-residential educational program for Bernard. We find no basis for holding that the determination of residency under IDEA or the California Education Code should be different from the ordinary determination of residency.[1]
 
 
 17
 Under the ordinary measure of residency, we have no difficulty in affirming the district court's holding that the Smiths continued to reside within the District while Bernard attended the Clinic. See 27 Cal.Jur.3d (Rev.) Part 2, Domicile Sec. 1-5.
 
 IV.
 
 18
 The Hearing Officer and district court found reimbursement to the Smiths appropriate only after September 12, the date the Clinic became state certified to provide counseling. The Smiths do not contest the denial of reimbursement before this date. Therefore, the only time period in which we must determine the appropriateness of educational programs offered by the District is for the period after September 12 in the 1989-90 school year.
 
 A.
 
 19
 During this period, the District's sole explicit offer (as set forth in its November 1 letter) was an educational program implementing Bernard's IEP through seventeen and one-half hours a week in the Communicatively Handicapped Class at Carlton School, supplemented by some one-to-one behavior modification counseling.
 
 
 20
 The Hearing Officer found that this program was inappropriate. The Hearing Officer found that there were no other autistic children at Carlton and there was no evidence that the teacher had been trained to work with autistic children. Furthermore, the Hearing Officer heeded the testimony of the witnesses who had extensive experience with autistic children, who testified that the learning environment at Carlton was inappropriate for Bernard's individual needs:
 
 
 21
 Bernard requires a more restrictive and less stimulating environment than that offered at Carlton. He requires full-time, one-to-one instruction and is unable to benefit from group instruction.... [A]ll of the witnesses recognized the need for Bernard to acquire attending skills prior to being able to benefit from language instruction. He has not yet attained these requisite skills.... Bernard had not ... developed the requisite skills to benefit from placement in the class at Carlton.
 
 
 22
 The substantive requirement of the IDEA is that a program be " 'individually designed to provide educational benefit to the handicapped child.' " Longview, 811 F.2d at 1314, quoting Rowley, 458 U.S. at 201, 102 S.Ct. at 3048. In light of the deference we grant the Hearing Officer as to judgments of educational policy, we find that Bernard's placement at Carlton was inappropriate because it was insufficiently individually designed to meet Bernard's special needs.
 
 B.
 
 23
 The District contends that McKinnon, the District's program for autistic children, was an appropriate placement for Bernard. As the district court found, and the District concedes, the District never formally offered Bernard a placement at McKinnon. The District argues that it did not offer McKinnon because the Smiths expressed their unwillingness to consider it as a placement. Thus, the question we face is whether the District was required to make a formal offer under the IDEA.
 
 
 24
 We find that a school district cannot escape its obligation under the IDEA to offer formally an appropriate educational placement by arguing that a disabled child's parents expressed unwillingness to accept that placement. The IDEA explicitly requires written prior notice to parents when an educational agency proposes, or refuses, to initiate or change the educational placement of a disabled child. See 20 U.S.C. Sec. 1415(b)(1)(C). The Supreme Court has explained the great importance of such procedural components of the IDEA. "When the elaborate and highly specific procedural safeguards embodied in Sec. 1415 [of the IDEA] are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid." Rowley, 458 U.S. at 205, 102 S.Ct. at 3050.
 
 
 25
 We find that this formal requirement has an important purpose that is not merely technical, and we therefore believe it should be enforced rigorously. The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any. Furthermore, a formal, specific offer from a school district will greatly assist parents in "present[ing] complaints with respect to any matter relating to the ... educational placement of the child." 20 U.S.C. Sec. 1415(b)(1)(E). For example, in this case, a formal offer of McKinnon would have served several purposes. It would have alerted the Smiths to the need to consider seriously whether McKinnon was an appropriate placement under the IDEA. The Smiths could not have been reimbursed for their unilateral placement of Bernard at the Clinic if McKinnon were an appropriate placement. Also, if a formal offer were made, the Smiths could have decided whether to oppose McKinnon or to accept it with the supplement of additional education services. Finally, by making a formal offer, the District would have been more prepared to introduce sufficient relevant evidence to the Hearing Officer of the appropriateness of McKinnon as a placement for Bernard.[2]
 
 V.
 
 26
 The Smiths, dissatisfied with the District's placement offering, unilaterally placed Bernard in the Clinic. In order for the District to be responsible for reimbursing the Smiths for their expenses in placing Bernard in the Clinic, the Clinic must provide an "appropriate alternative educational program." W.G., 960 F.2d at 1486.
 
 
 27
 As a preliminary matter, there is little room to dispute that Bernard's instruction at the Clinic was "individually designed to provide educational benefit to the handicapped child," as required by Longview, 811 F.2d at 1314. Bernard's counseling was individually designed because it implemented the specific program that Siegel and other autism experts thought most beneficial for Bernard. The educational benefit Bernard received from the Clinic was demonstrated by his significant progress in language skills, and increased cooperation and interaction with peers.
 
 
 28
 The District argues, however, that the Clinic cannot be an appropriate placement for Bernard because it was not certified to provide special education. The Supreme Court has rejected this position. It held that when a parent places a child in a private setting, reimbursement may be ordered even though the private institution does not satisfy the state education standards. Florence County Sch. Dist. Four v. Carter, --- U.S. ----, ----, 114 S.Ct. 361, 365, 126 L.Ed.2d 284 (1993). Nevertheless, the Smiths have not appealed the denial of reimbursement for the period before the clinic became certified to provide counseling.
 
 
 29
 We must review, however, the district court's finding that the Clinic became an appropriate placement after September 12 when it became certified to provide counseling, a "related service" to special education under IDEA. See 20 U.S.C. Sec. 1401(a)(17) (listing counseling as a related service). The District argues that federal regulations construing IDEA mandate that it is inappropriate to place a child solely in a related service when not in conjunction with special education itself. See 34 C.F.R. Sec. 300.13; 34 C.F.R. Sec. 300.14.
 
 
 30
 As explained above, the Supreme Court recently held that the appropriateness of a placement does not depend on whether the institution satisfies the state education standards. Carter, --- U.S. at ----, 114 S.Ct. at 365. In this case, however, this issue is best addressed under state law. "[S]tate procedures which more stringently protect the rights of the handicapped and their parents are consistent with the [IDEA] and [are] thus enforceable." Antkowiak v. Ambach, 838 F.2d 635, 641 (2d Cir.), cert. denied, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988).
 
 
 31
 California laws supplement IDEA on matters of related services, which California terms "Designated Instruction and Services" ("DIS"), and provide more stringent protection. See Cal.Educ.Code Secs. 56026, 56361, 56441.11(b) (West Supp.1993). These statutory provisions, when read in conjunction, mandate that under California law, handicapped three to five year old students may, when appropriate, be placed in a program that only provides DIS without simultaneous special education. This is also supported by the Declaration of Patrick Campbell, Director of Special Education for the California Department of Education, who stated that the CDE has always interpreted these statutes in this manner. Because this state law scheme is not inconsistent with IDEA, we will enforce it. Bernard's placement in the Clinic, which was only certified to provide the DIS of counseling and not special education itself, was appropriate under California law, and therefore under IDEA.
 
 VI.
 A.
 
 32
 The Supreme Court has held that a court may order a school district to reimburse parents who have unilaterally placed their child in an appropriate private special education after the school district has failed to offer an appropriate public education. Burlington School Committee v. Department of Education, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). The Smiths are entitled to reimbursement for tuition at the Clinic because the District failed to offer them an appropriate placement and the Smith's placement of Bernard at the Clinic was appropriate.
 
 B.
 
 33
 The Hearing Officer and the district court also found that the Smiths were entitled to reimbursement for transportation costs to and from the Clinic each day, the transportation costs of commuting between San Jose and Los Angeles at the beginning and end of Bernard's participation in the program and when the school is officially closed to students (i.e. Thanksgiving, winter and spring breaks), and to reimbursement for the cost of lodging for Bernard and Mrs. Smith in Los Angeles.
 
 
 34
 The District and the CDE contend that the district court was without power to award the Smiths reimbursement for lodging and transportation. We find that this reimbursement was appropriate.
 
 
 35
 Under the IDEA, a "free appropriate public education" includes not only special education, but also "related services." Related services include "transportation ... and other supportive services ... as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. Sec. 1401(a)(17). If a child's appropriate special education placement is at a non-residential program not within daily commuting distance of the family residence, transportation costs and lodging near the school are related services that are required to assist that child to benefit from the special education.
 
 
 36
 The legislative intent underlying the IDEA supports this finding. The IDEA explicitly states: "Congress finds that ... because of the lack of adequate services within the public school system, families are often forced to find services outside the public school system, often at great distance from their residence and at their own expense." 20 U.S.C. Sec. 1400(b)(6). "It is the sole purpose of [the IDEA] to assure that all children with disabilities have available to them ... a free appropriate public education." 20 U.S.C. Sec. 1400(c) (emphasis added). Therefore, we find that the language and spirit of the IDEA encompass reimbursement for reasonable transportation and lodging expenses in this case as related services.
 
 
 37
 Our holding is consistent with this court's recent decision in Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467 (9th Cir.1993). In Jackson the court ordered Ojai Unified School District to pay tuition, room, board, transportation and caretaking fees for a developmentally disabled student to attend the Foundation for the Junior Blind in Los Angeles. The court found that the public school system was not providing the student with a minimum level of educational benefit and that the Foundation, located approximately eighty-five miles from the child's home, was an appropriate educational placement. The Foundation's residential program was full and, in light of the child's fragile health, the court found that a daily commute was not feasible. Therefore, the court ordered the school district to pay the student's costs of living with his grandparents, approximately twenty miles from the Foundation and, thus, temporarily extended the reach of the Foundation's residential program.
 
 VII.
 
 38
 The Smiths' request for attorneys fees incurred in defending the District's appeal is granted. The case is remanded to the district court for determination of the amount of the appellate fee award. See Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 590 (9th Cir.1992).
 
 
 39
 For the foregoing reasons, we affirm the district court's entry of summary judgment for the Smiths and remand for a determination of the amount of the appellate fee award.
 
 
 
 [1]
 Our conclusion is buttressed by the declaration of Patrick Campbell, Director of Special Education for the California Department of Education, who stated that residency for special education coverage purposes is measured by the normal standards
 
 
 [2]
 The Hearing Officer was unable to make a determination of the appropriateness of placing Bernard at McKinnon because the District failed to set forth sufficient evidence concerning McKinnon. Given that the Hearing Officer, an expert on educational policy and practice, was unable to make an informed decision on the appropriateness of McKinnon based on the evidence before her, we are quite hesitant to do so on that same record