133 F.3d 384
 123 Ed. Law Rep. 37
 Michael DOE, by and through his parents and next friends,
Mr. and Mrs. Bill DOE, Plaintiff-Appellant,
v.
METROPOLITAN NASHVILLE PUBLIC SCHOOLS; Dr. Richard
Benjamin, in his official capacity, Defendants-Appellees.
 No. 96-6103.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 23, 1997.
Decided Jan. 5, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Feb. 13, 1998.
 
 Jack W. Derryberry, Jr. (argued and briefed), Ward, Derryberry & Thompson, Nashville, TN, for Plaintiff-Appellant.
 Rachel D. Allen (argued), Metropolitan Department of Law, Nashville, TN, John D. Kitch (briefed), Kitch & Garman, Nashville, TN, Judith Jo Shell (briefed), Metropolitan Department of Law, Nashville, TN, for Defendants-Appellees.
 Before: KEITH, BOGGS, and NORRIS, Circuit Judges.
 OPINION
 BOGGS, Circuit Judge.
 
 
 1
 Michael Doe, through his parents, sued the Metropolitan Nashville Public Schools (Metro) under the Individuals with Disabilities Education Act (IDEA), seeking review of an adverse decision by a Tennessee Administrative Law Judge. The ALJ had denied Doe (or, more precisely, his parents) reimbursement for expenses associated with his special education at a private school.
 
 
 2
 The district court granted the defendants' motion for summary judgment, holding that Doe's parents had decided unilaterally to place him at the private school. The district court determined that, because Metro had not been given the opportunity to evaluate Doe and construct an individualized educational plan, it was not obligated to reimburse the Does. The district court awarded summary judgment despite the existence of several disputed issues of material fact. We reverse the district court and remand this case for further proceedings.
 
 
 3
 * Michael Doe, a resident of Nashville, is learning disabled and has been diagnosed as emotionally disturbed. In 1992, when he was 12 years old, Michael was dismissed from Benton Hall, a private, special-education school in Nashville, for "assaultive" and "aggressive" behavior. At that point, Michael had only attended private schools, all in the Nashville area. After his dismissal from Benton Hall, however, his parents decided to place him in the Grove School, a private school in Connecticut. They made this decision without Metro's knowledge or input.
 
 
 4
 In October 1993, after Michael had been at Grove for a year, his parents requested a multi-disciplinary team (M-Team) meeting with Metro,[1] in order to consider Michael's educational needs. They also sought reimbursement for the expenses associated with sending Michael to Grove. After the third M-Team meeting, in April 1994, Metro certified Michael's eligibility for its special-education services and placed him in a local school. Metro refused, however, to reimburse the Does for Michael's education at Grove, since the decision to place him there had been made without their knowledge or input. After the six-month pendency of the M-Team review, during which Michael continued to attend Grove, the Does' expenses totalled $87,155.
 
 
 5
 Michael's parents requested a due-process hearing before a Tennessee state administrative law judge. They once again sought reimbursement for the cost of sending Michael to Grove, and they argued that Metro had failed to live up to the "child-find" requirements of IDEA, under which school districts must locate and evaluate disabled children within their jurisdictions.
 
 
 6
 The ALJ found that the school's child-find efforts were inadequate. Nonetheless, she determined that Metro's failure was outweighed in Michael's case by the Does' actual knowledge of available services. The ALJ concluded that Doe's placement at Grove was unilateral, that the unilateral character of the decision was a result of the Does' knowing failure to act rather than of Metro's laxity, and that reimbursement was thus inappropriate.
 
 
 7
 Pursuant to 20 U.S.C. § 1415(e), the Does brought a civil action to challenge the ALJ's decision, in the United States District Court for the Middle District of Tennessee. Metro moved for summary judgment. In response, Doe argued that summary judgment was inappropriate because the ALJ's findings were not undisputed, and because both parties intended to move for additional development of the record if the court denied summary judgment. The district court granted the motion, simply affirming the ALJ's findings, without specifically holding that there were no disputed issues of material facts. Doe then filed this timely appeal.
 
 II
 
 8
 * Under IDEA, the district court uses a "modified de novo" standard for reviewing state administrative determinations. Doe v. Board of Educ., 9 F.3d 455, 458 (6th Cir.1993) (applying Board of Educ. v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050-51, 73 L.Ed.2d 690 (1982)), cert. denied, 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994). This means that the district court should perform a de novo review, but it "should give due weight to the state administrative proceedings in reaching its decision." Doe, 9 F.3d at 458 (quoting Roncker ex rel. Roncker v. Walter, 700 F.2d 1058, 1062 (6th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983)). The Supreme Court warned courts against substituting "their own notions of sound educational policy for those of the school authorities which they review," and derived the due weight requirement from "[t]he fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings....' " Rowley, 458 U.S. at 206, 102 S.Ct. at 3051 (quoting 20 U.S.C. § 1415(e)).
 
 
 9
 Unfortunately, neither Rowley nor any of our cases interpreting it tells us explicitly what weight is "due." Cf. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("Once it is determined that due process applies, the question remains what process is due."). Other circuits have interpreted the standard in various ways. See, e.g., Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir.1997) (weight due is less than that under the "substantial evidence" test, but court should consider the state hearing panel's expertise and opportunity to observe demeanor evidence); Hartmann v. Loudoun County Bd. of Educ., 118 F.3d 996, 1000-01 (4th Cir.1997) ("Administrative findings in an IDEA case 'are entitled to be considered prima facie correct,' and 'the district court, if it is not going to follow them, is required to explain why it does not.' "); Roland M. v. Concord Sch. Comm., 910 F.2d 983, 989-90 (1st Cir.1990) ("Hence, the court must render ... a 'bounded, independent decision[ ]--bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court.' "), cert. denied, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).
 
 
 10
 Each of these interpretations of the due weight standard is sensible, and they are not mutually exclusive. For present purposes, though, we need not resolve the meaning of "due weight" definitively. We hold only that "due weight" does not mean that the district court can simply adopt the state administrative findings without an independent re-examination of the evidence. Unless the re-examination revealed that no material facts were in dispute, the district court would then have to weigh the evidence, which is never appropriate at the summary judgment stage. See Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
 
 
 11
 Although the ALJ had reached her own conclusions, the parties wanted to exercise their right in district court to re-contest the facts and to present additional evidence. See 20 U.S.C. § 1415(e)(2). As such, if genuine issues of material fact remained, summary judgment was inappropriate.[2] See Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2509-10 (1986); Tennessee Dep't of Mental Health v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996) (using the traditional summary-judgment standard in an IDEA context). The district court failed to apply the proper summary judgment standard, and even if it had done so, it would have been required to reject summary judgment.
 
 B
 
 12
 Metro argues that even if the district court had used the proper standard, it was still entitled to summary judgment because of the Does' admitted knowledge of the general availability of services. The decisive facts, Metro asserts, are that the Does knew they could obtain services from Metro; that they chose not to; that their placement of Michael at Grove was thus unilateral; and that reimbursement is therefore inappropriate per se.
 
 
 13
 It is well settled that parents whose children are already in the public system (that is, they have been evaluated by local officials and are receiving a publicly-funded education, whether in a public or private school) act at their own risk when they unilaterally move a child to a different school. Only where the court later determines that the original placement was improper under IDEA can the parents be reimbursed for the subsequent, unilateral placement. See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993); McNair v. Oak Hills Local Sch. Dist., 872 F.2d 153, 156 (6th Cir.1989).
 
 
 14
 There is a distinction, though, between parents who act unilaterally after consultation with the school system, and those who act unilaterally without any dialogue with the school. See Town of Burlington v. Department of Educ., 736 F.2d 773, 799 (1st Cir.1984), aff'd, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). In cases where the lack of dialogue stems from the school district's failure to conduct sufficient "child-find," reimbursement may be appropriate.
 
 
 15
 Put another way, reimbursement after a unilateral placement can be appropriate, upon a finding of sufficiently serious procedural failures by the school district. See Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 589 (9th Cir.1992); Hall ex rel. Hall v. Vance County Bd. of Educ., 774 F.2d 629, 634-35 (4th Cir.1985). Even though the Does had some general knowledge of the availability of services, the failure by Metro to apprise the Does of their specific procedural and substantive rights could make reimbursement a proper remedy.
 
 
 16
 Therefore, we reject Metro's claims that the Does' general knowledge meant as a matter of law that they were not entitled to reimbursement. Mere general knowledge is not sufficient to foreclose this inquiry, particularly when there is evidence of procedural failures by the school district. The extent of the Does' knowledge needs to be determined, as well as the degree of Metro's laxity. Then, these two factors needed to be weighed against each other, with due weight given to the ALJ's determinations. The ALJ weighed the factors, of course, but the district court should have performed its own analysis, based on all available evidence, rather than merely adopting on summary judgment the ALJ's evaluation of the administrative record. This will be the district court's task on remand.
 
 C
 
 17
 The district court also should have given separate consideration to reimbursement for the six-month "pendency" period between the Does' first official contact with Metro in October 1993, requesting the M-Team meeting, and the decision to bring Doe into the Metro system in April 1994. It is possible that, even if they were not entitled to pre-pendency reimbursement, the Does were entitled to pendency reimbursement. The ALJ recognized this possibility, but found that pendency reimbursement was not appropriate because the length of the M-Team proceedings was reasonable. The district court should have reviewed this determination, which was also clearly disputed and not appropriate for summary judgment.
 
 III
 
 18
 We find, therefore, that the district court's grant of summary judgment was inappropriate in this case. Accordingly, we REVERSE the district court and REMAND for further proceedings consistent with our opinion.
 
 
 
 [1]
 "M-Team" is a term under the IDEA for a group of experts and interested parties brought together to decide the appropriate educational course for a child
 
 
 [2]
 If neither party had expressed a desire to put on evidence beyond that in the administrative record, as allowed by 20 U.S.C. § 1415(e)(2), the district court could have decided this case at the same stage in the proceedings, but such a decision would not have been summary judgment. Summary judgment requires that there be no disputed issues of material fact; that the facts be viewed in the light most favorable to the non-movant; and that the movant be entitled to a judgment as a matter of law. See FED.R.CIV.P. 56(c); Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2509-10
 Therefore, we disagree with the Ninth Circuit, which has said that when no party has requested the hearing of additional evidence, a motion for summary judgment is an appropriate way to bring about a regular appeal, with a regular preponderance standard. See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir.1995) ("Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination."); see also Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir.1993) (treating summary judgment motion as bench trial based on stipulated record). The Capistrano court wondered "what else the district court could do as a practical matter" Id. It is true that a district court in that situation would have nothing to do other than to decide the case based on the record. The distinction between a review of the ALJ's decision on a closed record and summary judgment is substantive--a very different standard is applied--rather than merely procedural. There is no good reason, however, to confuse matters by allowing this to be called summary judgment.