Yibing DONG; Huizong Lin, as next friends on behalf of their daughter, Lisa Dong, No. 98–2186 Plaintiffs–Appellants,

v.

BOARD OF EDUCATION OF THE ROCHESTER COMMUNITY SCHOOLS; Angelynn Martin, Defendants–Appellees.

No. 98–2186.

United States Court of Appeals, Sixth Circuit.

Argued: Nov. 4, 1999

Decided and Filed: Dec. 17, 1999

Richard J. Landau (argued and briefed), Dykema Gossett, Ann Arbor, Michigan, for Plaintiffs–Appellants.

Richard E. Kroopnick (argued and briefed), Pollard & Albertson, Bloomfield Hills, Michigan, for Defendants–Appellees.

Before: GUY and BOGGS, Circuit Judges; HOOD,* District Judge.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Plaintiffs, Yibing Dong and Huizong Lin (the Dongs), as next friend of their daughter Lisa, appeal from the entry of judgment in favor of defendants, the Board of Education of the Rochester Community Schools and Angelynn Martin, the supervisor of a program for autistic impaired children operated by the Birmingham Public Schools. Plaintiffs challenged the individualized education program (IEP) developed for Lisa for the 1996–97 school year as failing to provide a free appropriate public education (FAPE) and sought to recover the costs of providing one-on-one education for her at home.

Plaintiffs argue that the district court erred in granting partial summary judgment to defendants on their claims arising

under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1415, by (1) applying an incorrect summary judgment standard; (2) placing the burden of proof upon plaintiffs; (3) finding that defendants had substantially complied with the procedural requirements of the IDEA; and (4) concluding that the IEP offered Lisa an FAPE.[1] Plaintiffs also claim that the district court erred in denying their motion for leave to file an amended class action complaint alleging "systemic violations" of the rights of other autistic impaired children. After a review of the record and the arguments presented on appeal, we affirm.

## I.

Lisa Dong was born November 1, 1991, and resides with her parents in the Rochester Hills Community School District (District). Lisa was evaluated at age three by a Multidisciplinary Evaluation Team (MET), an IEP was agreed to, and she was enrolled in a special education early intervention program. In May 1995, an IEP placed Lisa in a pre-primary impaired classroom. Lisa was evaluated for suspected autism by the Central Evaluation Team (CET). As a result of the evaluation, the CET recommended that Lisa be certified for special education services as autistic impaired.

Based on the evaluation, an Individualized Educational Planning Committee (IEPC) met in October 1995 and redetermined Lisa's eligibility to be classified as autistic impaired. Oakland County's programs for autistic children are operated in several school districts. At the request of the Dongs, Lisa was enrolled in the Birmingham Public Schools' program for autistic impaired children and began attend-

* The Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Plaintiffs' other claims were dismissed largely on the basis of the finding that the IEP offered an FAPE. Plaintiffs do not raise any separate arguments concerning those claims.

ing 13 hours per week.[2] The background facts following this IEP are succinctly summarized by the district court.

Lisa's parents contemporaneously began a home program for Lisa on their own. They contacted Patricia Meinhold, Ph. D., a psychologist with experience in the area of "Lovaas-style" methodology, and Rebecca Lepak, a speech therapist. The Lovaas intervention method is a behavior therapy method. It has been widely modified over the years by professionals and parents, but common characteristics include intensive training one-on-one, 30–40 hours per week, discrete trial therapy (DTT), and an in-home component (as opposed to therapy in a professional setting). Beginning in November 1995, Lisa was receiving 10 hours of one-on-one home training in the DTT format. That was increased to 18 hours/week, and then to 20 hours/week by May 1996. This was in addition to the 13 hours of school she was attending each week. Plus, Lisa was meeting at home weekly with speech therapist Rebecca Lepak, who used the DTT method with her speech therapy.

The Dongs repeatedly advised Lisa's teacher and other staff of their intensive work with Lisa. They also grew increasingly concerned about what they observed to be less one-on-one work by school staff than they had been led to expect at the October 1995 IEPC. The Dongs requested a new IEPC in the Spring of 1996 to request more one-on-one instruction for Lisa.

On May 15, 1996, an IEPC was convened to consider educational programming for Lisa for the 1996–97 school year. In attendance were Lisa's parents, Defendant Angelynn Martin, Patricia Zahra (Lisa's teacher during the 1995–96 year), Christina Vedder (the school psychologist for the preschool autistic program), Susan Dilgard (the program speech pathologist who worked extensively with Lisa), and Deborah O'Neill (Project Find Coordinator for the Rochester Community Schools). Dr. Meinhold and speech therapist Rebecca Lepak were not invited to attend.

The May 15, 1996 IEPC continued Lisa's eligibility as autistic impaired. Following a preliminary discussion of goals and objectives, the Dongs requested that Lisa receive more "one-on-one" time in the school program. The IEPC was adjourned and reconvened on June 21, 1996, where the goals and objectives were reviewed. Lisa had made substantial improvements in virtually every skill area from November 1995 to June 1996. Ms. Lepak submitted a report that recommended continuation of intensive one-on-one speech and language therapy. The Dongs prepared a memo for this IEPC which requested more one-on-one time. The Dongs intended the request to be for a 40 hour per week DTT program, although they did not mention DTT or Lovaas in the memo. Defendant Martin, the autistic program supervisor, did not read the memo as a request for 40 hours of DTT.

The IEPC recommended that Lisa participate in a 27.5 hour per week school TEACCH[2] program as of August 1996. The school district would only commit to 9.5–10 hours of individualized instruction. When asked, some of the

---

**2.** Plaintiffs emphasize that they provided a two-page handwritten note at the October IEPC, which addressed goals for Lisa and indicated the need for, among other things, "very intensive one to one behavior, speech, occupation therapy sessions" with intensity of no less than two-thirds of her school time. The note was not specifically discussed at the IEPC meeting, but was attached to the October 1995 IEP form. There was some confusion on the part of Lisa's teacher about whether the parents' note was part of the IEP and whether or not the Dongs might think it was part of the IEP. At the due process hearing, witnesses recognized the parents' references to be to the "Lovaas" method. The note relates to the October 1995 IEP, however, which is not the basis of the plaintiffs' IDEA claim. The state hearing review officer also found that the note was not part of the IEP.

staff stated that the program offered to Lisa was typical of those offered to other students of her age with her disability; although Ms. Martin claimed that Lisa's plan included more one-on-one instruction than the typical program for autistic impaired preschoolers.

After the June 21, 1996 IEPC, the Dongs sent Ms. Martin a letter which clarified that they were requesting a 40 hour per week DTT program. Martin did not reconvene the IEPC team. She rejected this proposal, and chose to support the IEP which she signed on June 21, 1996. The Dongs signed the IEP in disagreement. Negotiations with the district were unsuccessful, and the district accepted the IEP on July 18, 1996. Rather than follow the IEP plan for the 1996–97 school year, the Dongs chose to remove Lisa from school and she began a 30–40 hour home based DTT program. Lisa has continued to make progress.

---

[2]TEACCH is another method for instructing AI [autistic impaired] children, like DTT. It is a classroom based method, not home-based, and it stresses a cognitive approach, as opposed to behavioral.

The Dongs' letter of June 27, clarifying that they wanted 30 to 40 hours per week of one-on-one behavioral therapy, also requested a due process hearing.

Six days of hearings were held at the end of 1996 before a local hearing officer, who concluded that the proposed IEP offered Lisa an FAPE and that the District had complied with the procedural requirements. The Dongs appealed the decision to a State Hearing Review Officer (SHRO), whose decision is reviewed by this court. The SHRO reviewed the evidence and found that the District did not violate the procedural requirements of the IDEA in any of the ways alleged by the Dongs and that the IEP for the 1996–97

school year provided Lisa with an FAPE designed to maximize her potential.[3]

Plaintiffs promptly filed this action in federal court alleging federal and state claims, including claims under the IDEA. After the close of the discovery period, plaintiffs filed a motion for partial summary judgment with respect to the IDEA claims based upon the fully-developed administrative record. The district court reviewed the record and plaintiffs' claims, denied plaintiffs' motion for partial summary judgment, and entered partial summary judgment in favor of defendants on the IDEA claims. Defendants then filed a motion for summary judgment on the remaining claims, relying heavily upon the district court's decision on the IDEA claims. In response, plaintiffs filed a motion for leave to file a first amended class action complaint. On September 17, 1998, the district court granted defendants' motion for summary judgment and denied the motion for leave to amend. This timely appeal followed.

## II.

### A. Summary Judgment Under IDEA

■ Plaintiffs argue that the district court erred by granting partial summary judgment to defendants in the absence of a proper motion by defendants and notwithstanding the statutory authority to present additional evidence under 20 U.S.C. § 1415(e). Plaintiffs rely upon *Doe by and Through Doe v. Metropolitan Nashville Public Schools*, 133 F.3d 384, 387 (6th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 47, 142 L.Ed.2d 36 (1998), in which this court held summary judgment was not appropriate if reexamination of the evidence revealed that genuine issues of material fact existed, or if the parties wished to present additional evidence and genuine issues of material fact remain. While

---

**3.** The SHRO also found that failure to begin the new IEP during the summer, instead of waiting until September, denied Lisa an FAPE during that period as the existing plan provided only 13 hours per week. The Dis-

trict was ordered to reimburse the Dongs for the cost of the home-based DTT program for the summer of 1996. This finding is not at issue in this appeal.

plaintiffs state that they were preparing for trial, their motion for partial summary judgment relied upon the fully-developed administrative record and offered no new evidence. The court in *Nashville Public Schools* observed that:

> If neither party has expressed a desire to put on evidence beyond that in the administrative record, as allowed by 20 U.S.C. § 1415(e)(2), the district court could have decided this case at the same stage in the proceedings, but such a decision would not have been summary judgment.... It is true that a district court in that situation would have nothing to do other than to decide the case based on the record.... There is no good reason, however, to confuse matters by allowing this to be called summary judgment.

133 F.3d at 387 n. 2. In addition, we agree with the Seventh Circuit that if neither party clearly indicates its desire to present additional evidence in an IDEA case, the district court is entitled to assume that the parties intend that the case be decided on the basis of the administrative record. *See Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir.1994).

The district court should have termed the disposition to be entry of partial judgment rather than partial summary judgment. Nonetheless, the district court did not apply general summary judgment standards to find plaintiffs had failed to show that a genuine issue of material fact existed. We are convinced that the district court conducted an independent examination of the record and properly decided the case at that juncture under the appropriate "modified *de novo*" review applicable to IDEA claims.[4]

4. The district court explained:
 In the final paragraph of Defendants' response brief, they request that partial summary judgment be entered in their favor on Count I. This was not a properly filed motion under Eastern District of Michigan local rule 7.1, nor was it timely with respect to the motion cut-off date in this case. Ordinarily, such a request for relief would not

Plaintiffs assert that the district court erroneously resolved disputed issues of fact in deciding the matter without a trial. Plaintiffs' disagreement with the court's conclusions, however, does not demonstrate a genuine issue of material fact or preclude entry of judgment upon review of the administrative record. Nor should plaintiffs have been surprised that the matter was ripe for disposition on the record, as defendants' response brief requested entry of partial summary judgment on the IDEA claims. This case is simply not one in which summary judgment was entered sua sponte and without notice. *Cf. Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995).

## B. Burden of Proof

█ Despite plaintiffs' efforts to distinguish our established line of authority, we adhere to the cases holding that the party challenging the terms of an IEP should bear the burden of proving that the placement was not appropriate. *See Renner v. Board of Educ. of Pub. Schs. of Ann Arbor*, 185 F.3d 635, 642 (6th Cir.1999); *Doe by and Through Doe v. Board of Educ. of Tullahoma City Schs.*, 9 F.3d 455 (6th Cir.1993); *Cordrey v. Euckert*, 917 F.2d 1460, 1466, 1469 (6th Cir.1990); *Doe by and Through Doe v. Defendant I*, 898 F.2d 1186, 1191 (6th Cir.1990).

Plaintiffs make the novel argument that the District should bear the burden of proof in an IDEA case arising in Michigan because the IDEA incorporates Michigan's heightened substantive standard requiring that an IEP be "designed to develop the maximum potential" of the handicapped child. MICH. COMP. LAWS ANN.

be entertained by the court. However, in this case, it would be inappropriate for this issue to go before a jury, as it is a de novo review of a hearing officer's decision, and only matters of law are at issue. Thus, defendants' relief will be granted, and partial summary judgment will be entered in defendants' favor on Count I of the complaint.

§ 380.1751(1) (West 1997). This argument, however, confuses the substantive requirements necessary to satisfy the IDEA with the question of which party bears the burden of proof.

The confusion is demonstrated by plaintiffs' reliance on the discussion in *Tucker by Tucker v. Calloway County Board of Education*, 136 F.3d 495, 505 (6th Cir. 1998), indicating that since an appropriate public education does not mean "absolutely best" or "potential-maximizing" education, the court's review must focus on whether the proposed placement was reasonably calculated to provide educational benefits. This discussion concerned the substantive requirements of the IDEA, not the burden of proof. In fact, this court rejected a similar claim in *Cordrey*, 917 F.2d at 1466, in which the parents argued that the burden of proof with respect to procedural compliance should lie with the school district because an IEP's procedural compliance must be subjected to "strict review." *See also Clyde K. v. Puyallup Sch. Dist. No. 3*, 35 F.3d 1396, 1398–99 (9th Cir.1994) (burden on party challenging administrative ruling).

### C. Free Appropriate Public Education

■ An IEP provides a free appropriate public education if (1) the state has complied with the procedures set forth in the IDEA and (2) the IEP developed through the procedures is reasonably calculated to enable the child to receive educational benefits. *See Doe v. Defendant I*, 898 F.2d at 1188 (quoting *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). The substantive requirement of the IDEA found in the second part incorporates Michigan's higher standard requiring that the IEP be designed to "develop the maximum potential" of the child. *See Brimmer v. Traverse City Area Pub. Schs.*, 872 F.Supp. 447, 454 (W.D.Mich.1994); *Barwacz v. Michigan Dep't of Educ.*, 674 F.Supp. 1296 (W.D.Mich.1987).

■ We review a district court's review of an administrative ruling in an IDEA case under a "modified *de novo*" standard. *See Doe v. Nashville Pub. Schs.*, 133 F.3d at 386. If the procedural requirements of the IDEA are met, greater deference is to be afforded to the district's placement decision. *See Tucker*, 136 F.3d at 502 (quoting *Roncker ex rel. Roncker v. Walter*, 700 F.2d 1058, 1062 (6th Cir.1983)). The Supreme Court stated in this regard that

the provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to these proceedings.

*Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). We have held that "due weight" requires that the court conduct an "independent reexamination of the evidence." *Nashville Pub. Schs.*, 133 F.3d at 387. With this in mind, we turn to the specific claims of error on appeal.

#### 1. Alleged Procedural Violations

■ While we strictly review an IEP for procedural compliance, technical deviations do not render an IEP invalid. *See Defendant I*, 898 F.2d at 1190; *Brimmer*, 872 F.Supp. at 449. Plaintiffs continue to argue that the District's failure to comply with certain procedural requirements invalidated the May/June 1996 IEP and that, therefore, the District was required to reimburse them for the costs of providing

Lisa with one-on-one behavioral therapy at home. These claims were rejected by the SHRO and the district court. We find that the district court correctly evaluated the alleged failures and agree with its reasoning and analysis. As a result, we write only briefly to address these claims.

■ First, plaintiffs argue that the IEP failed to satisfy the requirement that the District ensure that those making the placement decision include "persons knowledgeable about the child, the meaning of the evaluation data, and the placement options[.]" 34 C.F.R. § 300.533(a)(3) (1998).[5] While plaintiffs generally fault the IEPC for failing to include an "expert" on autism, or the Lovaas–DTT method, their specific complaint is that the District did not invite Dr. Meinhold or Ms. Lepak to participate in the IEPC. We reject the contention that the District must include an expert in the particular *teaching method* preferred by the parents in order to satisfy the requirement that the IEPC include persons knowledgeable about "placement options."[6]

■ Further, as the district court observed, the school staff members present at the IEPC, Lisa's school psychologist, speech pathologist, and teacher, were "extremely well qualified in the area of autism treatments, and they were fully qualified to determine if a group or one-on-one setting would be best."[7] Ms. Lepak provided the IEPC with a report and the Dongs expressed their preference for more intensive one-on-one behavioral therapy. Dr. Meinhold, who had consulted with the Dongs only a few times, recommended a 30 to 40 hour per week one-on-one DTT program, to be divided between school and home. We agree with the district court that the presence of neither Dr. Meinhold nor Ms. Lepak was required for the IEPC to make an informed decision.

■■ Second, plaintiffs assert that the IEP is procedurally defective because it proposed a "significant change in placement" without having made a "comprehensive evaluation" of Lisa's needs. *See Brimmer*, 872 F.Supp. at 449. Whether a proposed change in placement triggers procedural protections depends on the importance of the modification and whether it is likely to affect the child's learning experience in some significant way. *See id.* Plaintiffs characterize the change in program as a change from 13 hours of classroom-based instruction and 30 to 40 hours of home-based DTT, to one consisting only of 27.5 hours of a TEACCH-based program. However, the SHRO found that, since the Dongs' October 1995 note did not become part of the IEP, the proposed change in placement would increase Lisa's time in the autistic impaired classroom from a half-day to a full-day, which is typical when a child turns five years of age. The SHRO also found that any pro-

---

**5.** The regulations in 34 C.F.R. pt. 300, were revised effective May 11, 1999, *see* 64 Fed. Reg. 12406 (1999).

**6.** Plaintiff's reliance upon *Union School District v. Smith*, 15 F.3d 1519, 1523 (9th Cir. 1994), also is misplaced. In that case, the school district failed to make a full evaluation of the child's needs because the MET did not include "at least one teacher or other specialist with knowledge in the area of suspected disability" (*i.e.*, a specialist in autism). *Id.* (quoting 34 C.F.R. § 300.532(e)). In *Renner*, this court found that the failure of the MET to consult with Dr. Meinhold did not constitute a serious deficiency in the IEP. *See* 185 F.3d at 644.

**7.** Plaintiffs rely on testimony from Susan Dilgard, the school's speech pathologist, that she was familiar with the Lovaas approach because she attended a full-day presentation by Dr. Lovaas and read articles about it, but was not qualified to implement or modify a Lovaas program. When asked if anyone at the IEPC was "familiar, skilled, or trained in the Lovaas approach," Dilgard answered "I don't know." Plaintiffs do not dispute, however, that defendant Martin, the supervisor of Birmingham's autistic program, had used the DTT method and was familiar with the Lovaas program; or that Ms. Zahra, Lisa's teacher, received a graduate level autistic impaired endorsement in 1992 and had seven years' experience teaching autistic children.

cedural violation in this regard was technical, not substantive in nature.

There is no dispute that, as the district court observed, Lisa would attend the same school, the same program, and have the same teacher and staff working with her. Further, we completely agree with the district court that even if the change was significant enough to trigger the evaluation requirement the violation was, at most, a technical one "because all parties agreed that Lisa would benefit from a full day program at that stage. The parties disagreed over which method to use, and more testing [and] another evaluation would not have altered the parties' views on methods." Cf. Cleveland Heights–Univ. Heights Sch. Dist. v. Boss, 144 F.3d 391, 398–99 (6th Cir.1998) (failure to include objective criteria for measuring student's progress was far from technical and was not harmless as omission went to "heart" of plan); Defendant I, 898 F.2d at 1190–91 (failure to include present performance or criteria for evaluating progress was technical deviation where grades were known and student attended regular classroom).

■ Next, plaintiffs contend that the district court erred in concluding that the parental participation requirement was satisfied. Specifically, plaintiffs claim that the requirement was violated by the District's failure to reconvene the IEPC to consider their letter of June 27, which clarified that their request was for a 30 to 40 hour per week program of DTT and requested a due process hearing. A review of the record reveals that the district court and the SHRO correctly concluded

that the Dongs were afforded an opportunity to participate in the discussions and decisionmaking during the May and June 1996 IEPC meetings and that their request for more intensive one-on-one behavioral therapy was considered prior to the Dongs' June 27 letter. The District did not unilaterally reject the Dongs' plan, as the IEPC had specifically considered their earlier written request for more one-on-one behavioral therapy.[8]

## 2. Alleged Substantive Violations

■ Plaintiffs argue that the IEP was defective because it failed to consider Lisa's "unique needs" but, rather, only offered a "standard" autistic impaired program based on what might be best for a "typical" autistic child. Although characterized as procedural by plaintiffs, the requirement that the IEP be designed to meet the child's "unique needs" is derived from the definition of "special education" in 20 U.S.C. § 1401(a)(16).

In a recent IDEA case involving an autistic child and his parents' request for 40 hours per week of DTT at the recommendation of Dr. Meinhold, this court observed that there was no indication that there was anything unique about the child's autism and found that the IEP provided an appropriate educational opportunity in light of his unique and particular needs. See Renner, 185 F.3d at 643. The court further noted that: "With respect to 'special needs,' it appeared to the magistrate judge that Dr. Meinhold's recommendation of 40 hours of one-on-one DTT per week was her usual and customary program for all

8. We further observe that plaintiffs do not actually claim a violation of the procedural regulations set out in 34 C.F.R. § 300.345 itself but, rather, argue that the intent expressed in the agency's interpretation of the regulations was violated by the failure to reconvene the IEPC. The agency's interpretations of the regulations during the relevant time included the following question and answer:

26. What is the role of the parents at an IEP meeting? The parents of a child with a disability are expected to be equal participants along with school personnel, in developing, reviewing, and revising the child's IEP. This is an active role in which the parents (1) participate in the discussion about the child's needs for special education and related services, and (2) join with the other participants in deciding what services the agency will provide to the child.

34 C.F.R. pt. App. C (1997).

young autistic children with general needs commensurate with this problem, and not geared to [the child] specifically." *Id.*

Likewise, in this case the crux of the disagreement concerning Lisa's 1996–97 IEP can be found in the competing methodologies of the TEACCH-based and DTT programs. The decision not to provide the more intense one-on-one behavioral therapy that the Dongs requested cannot be considered a failure to address Lisa's "unique needs." This was not a generic special education classroom that failed to meet the challenges of autistic impaired students or a situation where the child had some additional need outside the autistic impairment that was not addressed. Rather, the autistic impaired program recommended for Lisa was

> a 27.5 hour per week program with a staff to student ratio of one to two, and a mix of one-on-one and small group instruction, mainstreaming and reverse mainstreaming, in a functional language based program. Staff working with Lisa would include paraprofessionals, a teacher, a speech pathologist, and an occupational therapist. The school staff saw the TEACCH program as an opportunity for Lisa to learn generalization of language and spontaneous communication, independence, and social interaction; none of which would be stressed in a DTT program.

Lisa's individual needs were addressed in designing the IEP in question.[9]

 Finally, the Dongs contend that the IEP failed to satisfy the substantive requirement that it be designed to develop Lisa's "maximum potential." Plaintiffs rely on the opinion of Dr. Meinhold that anything less than a 40 hour per week DTT program would not permit Lisa to attain her maximum potential and the testimony of Ms. Lepak that Lisa continued to improve after being withdrawn from the school's program. Plaintiffs emphasize that no expert in applied behavioral analysis was offered to dispute this assessment.

The SHRO's decision, which is entitled to due weight, found that *both* the Lovaas-style DTT program of 40 hours per week and the District's TEACCH influenced language based autistic impaired program of 27.5 hours per week would provide Lisa with an FAPE designed to maximize her potential. Comparing these two appropriate teaching methodologies, the SHRO further found that the IEP was designed to maximize her potential in the least restrictive environment. The district court went a step further to conclude that, taking into account the IDEA's goal of providing services in the least restrictive environment, the District's program was better designed to develop Lisa's potential than the more restrictive DTT program.

 Michigan's maximum potential standard "does not necessarily require the best education possible" or require "a model education, adopting the most sophisticated pedagogical methods without fiscal or geographic constraints." *Renner,* 185 F.3d at 645 (quoting *Brimmer,* 872 F.Supp. at 454, and *Barwacz v. Michigan Dept. of Educ.,* 674 F.Supp. 1296 at 1302). Plaintiffs' belief that the DTT program would be best able to develop Lisa's potential does not mean that it was the only FAPE that the District could offer under the IDEA. In one case, relied upon by plaintiffs here, the court found that a watered-down, ten-hour per week TEACCH-based program did not offer an FAPE. *See Delaware County Intermediate Unit No. 25 v. Martin K.,* 831 F.Supp. 1206, 1230 (E.D.Pa.1993). Nonetheless, the court in *Martin K.* also stated that if the TEACCH program were improved, such that either it or the DTT Lovaas-style

---

9. The IEP here was not comparable to the program found to be inappropriate in *Union School,* 15 F.3d at 1525. In that case, an autistic impaired child was offered an IEP in a communicatively handicapped classroom in which there were no other autistic children, the teachers were not trained to work with autistic children, and the children received only group instruction.

**804**

program was appropriate under the IDEA, the court would have to yield to the state's resolution of a dispute between the competing programs. The record shows that the IEP at issue in this case offered an FAPE in the least restrictive environment. As a result, the Dongs may not receive reimbursement for the cost of providing Lisa with what they believe to be a better program.

### D. Amended Class Action Complaint

After dismissal of the IDEA claims and in response to the motion for summary judgment on the remaining claims, plaintiffs sought leave to amend the complaint to assert class action claims on behalf of all autistic impaired students born after January 1990 whose parents requested and were refused a DTT program in the Oakland Intermediate School District. Plaintiffs represent that the common questions of law and fact included whether the District violated the IDEA and other federal and state laws by "adopting a uniform program for AI eligible students based exclusively on a TEACCH-based model and associated placements" without offering a "continuum of alternative placements."

The district court denied the motion because (1) the plaintiffs' individual claims had been dismissed and (2) the complaint failed to sufficiently allege facts to show that the class would be so numerous that joinder of all members was impracticable.[10] The dismissal of existing claims is not, standing alone, a sufficient basis to deny leave to amend. *See Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir.1988) (abuse of discretion to dismiss without considering pending motion to amend). In this case, however, the district court expressly found that the IEP in question offered Lisa an FAPE. Completely aside from the dismissal of plaintiffs' individual claims, we agree that the

proposed amended complaint did not allege facts sufficient to show that joinder of the putative class members would be impracticable as is required under Fed. R.Civ.P. 23(a). *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1033 (6th Cir. 1992). On appeal, plaintiffs likewise give no indication of how many class members there may be, or explain why joinder of the class members would be impracticable. We are convinced that the district court did not abuse its discretion in denying plaintiffs' motion to amend.

**AFFIRMED.**

---

10. Defendants also argued that leave should be denied because plaintiffs failed to exhaust administrative remedies with respect to the

class action claims. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1309 (9th Cir. 1992). We do not reach this issue.