**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ORANGE COUNTY DEPARTMENT OF
EDUCATION,
　　　　　　*Petitioner-Appellee,*

　　　　　　v.

CALIFORNIA DEPARTMENT OF
EDUCATION,
　　　　　　*Respondent-Appellant,*

　　　　　　and

A. S., a minor; LOS ANGELES
UNIFIED SCHOOL DISTRICT; CHARTER
OAK UNIFIED SCHOOL DISTRICT;
CALIFORNIA OFFICE OF
ADMINISTRATIVE HEARINGS,
　　　　　　*Respondents.*

No. 09-56192

D.C. No.
No. 8:08-cv-00077-
JVS-MLG
Central District of
California,
Santa Ana

ORDER
CERTIFYING A
QUESTION TO
THE SUPREME
COURT OF
CALIFORNIA

Filed May 18, 2011

Before: Raymond C. Fisher and Jay S. Bybee, Circuit
Judges, and Edward F. Shea, District Judge.*

---

## ORDER

This case requires us to decide, as a matter of California
law, which California agency is responsible for funding a spe-
cial education student's placement in an out-of-state residen-
tial treatment facility. We respectfully request that the
California Supreme Court exercise its discretion and decide
the certified question presented below.

---

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

6539

## I.  Question Certified

Pursuant to Rule 8.548 of the California Rules of Court, we request that the California Supreme Court answer the following question:

> Whether under California law the school district responsible for the costs of a special education student's education while the student is placed at an out-of-state residential treatment facility is the district in which the student's de facto parent, who is authorized to make educational decisions on behalf of the student, resides.

We understand that the Court may reformulate our question, and we agree to accept and follow the Court's decision. *See* Cal. R. Ct. 8.548(b)(2), (f)(5). The California Supreme Court's decision on this question of California law could determine the outcome of this appeal and no controlling California precedent exists. *See* Cal. R. Ct. 8.548(a).

We certify this question because deciding it would require us to answer novel and difficult questions of California law about the relationships among multiple provisions of the California Education Code and among numerous California governmental entities. We acknowledge that the question raises issues of particular interest to California and its courts, and we note that three cases pending in our court may rely upon the answer to this question. Unfortunately, the state administrative and federal judicial bodies that have addressed the certified question to date have reached conflicting and inconsistent conclusions. Therefore, considerations of comity and federalism favor resolution of the certified question by California's highest court.

## II.  Background

At all relevant times, A.S., a California minor, was eligible for special education services under the Individuals with Dis-

abilities Education Act (IDEA) as an emotionally disturbed child. Joint Statement of Stipulated Facts ¶ 10. Since 1996, A.S. has been a dependent of the Orange County Juvenile Court, in accordance with California Welfare and Institutions Code section 300 *et seq. Id.* ¶ 1. That court terminated the parental rights of A.S.'s biological parents, including their educational rights, in 1999. *Id.* ¶ 5.

Lori Hardy was A.S.'s foster parent from approximately February 2000 to April 2004. *Id.* ¶ 6. Hardy is a resident of the City of Orange and at all relevant times resided within the Orange Unified School District. *Id.* ¶ 8. In April 2003, the juvenile court appointed Hardy as A.S.'s de facto parent. *Id.* ¶ 7. *See* Cal. R. Ct. 5.502(10); Cal. R. Ct. 5.534(e). It is undisputed that at all relevant times Hardy was authorized to make educational decisions on A.S.'s behalf. Joint Statement of Stipulated Facts ¶ 9.

In 2006, A.S.'s individualized education program (IEP) team, which had been convened by the Orange County Department of Education ("Orange County" or "the County"), referred A.S. to the Orange County Health Care Agency (OCHCA) for a mental health assessment. *Id.* ¶ 38. OCHCA recommended that A.S. be placed at Cinnamon Hills, a residential treatment facility in Utah. *Id.* ¶¶ 42, 47. The IEP team agreed with OCHCA's recommendation and the juvenile court issued an order approving the placement. *Id.* ¶¶ 47, 50. A.S. was placed at Cinnamon Hills beginning July 28, 2006. *Id.* ¶ 53. Without conceding financial responsibility, Orange County fronted the costs of A.S.'s educational services at Cinnamon Hills from that date through April 19, 2009.

In October 2006, A.S. filed a request for a special education due process hearing. After mediation resolved all other issues, the only issue for the hearing was which public agency was responsible for funding A.S.'s placement at Cinnamon Hills. Because of A.S.'s various placements,[1] Orange County,

---

[1]Between September 2004 and his placement at Cinnamon Hills in July 2006, A.S. was placed in several facilities within California, including,

Los Angeles Unified School District, Charter Oaks Unified School District and the California Department of Education (CDE) were all identified as agencies possibly responsible for A.S.'s educational funding. In October 2007, the California Office of Administrative Hearings (OAH) issued an administrative decision naming Orange County the responsible agency. *See Student v. Orange Cnty. Dep't of Educ.*, No. 2006100050, at 10 (Cal. Office of Admin. Hearings Oct. 31, 2007).[2]

Orange County appealed that decision to U.S. District Court for the Central District of California, arguing that CDE is responsible for A.S.'s out-of-state education. The County argued that California law fails to make any public agency responsible for providing special education programs to children like A.S., who have no parents and are placed in residential treatment centers outside California. The County therefore argued that CDE should be held responsible by default.

among others, the San Gabriel Children's Center, a licensed children's institution, where A.S. was provided special educational services by the Charter Oaks Unified School District, and the Orangewood Children's Home, a temporary shelter care facility and licensed group home, where A.S. received special education services at William Lyon School by the Orange County Department of Education. Joint Statement of Stipulated Facts ¶¶ 11-32. During the weeks just prior to A.S.'s placement at Cinnamon Hills, A.S. was placed in Gateways Hospital in Los Angeles on a medical, psychiatric stay. *Id.* ¶¶ 45, 54. The hospital is located within the Los Angeles Unified School District. *Id.* ¶ 45.

[2]At the time, CDE argued that Orange County was the agency responsible for A.S.'s education. CDE has now abandoned that position, arguing that the Orange Unified School District, which is not a party to this action, is the responsible agency. CDE is not the only entity that has offered inconsistent answers to the state-law questions presented in this appeal. The OAH has also done so. *See* Brief of Respondent-Appellant 7. That these questions have confounded California's leading authorities on California education law reinforces our conclusion that a California court, rather than this court, should resolve these questions.

CDE moved to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied that motion in a published decision, *Orange Cnty. Dep't of Educ. v. A.S.*, 567 F. Supp. 2d 1165 (C.D. Cal. 2008), and then granted Orange County's motion for summary judgment. The court agreed with the County that California law failed to make any public agency responsible for A.S.'s education and therefore deemed CDE responsible by default. CDE timely appealed to this court.

## III.   Explanation of Certification

The resolution of this appeal turns on two issues of California law for which there is no controlling authority.

### A.   Whether § 56028 Supplies a Definition of Parent for § 48200

The first issue relates to which agency is responsible for funding A.S.'s out-of-state placement. The parties agree that California Education Code section 48200 establishes the general rule that, under California law, the school district responsible for the education of a child between the ages of 6 and 18 is the district in which the child's "parent or legal guardian" resides. *See Katz v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 11 Cal. Rptr. 3d 546, 553 (Ct. App. 2004) ("Section 48200 embodies the general rule that parental residence dictates a pupil's proper school district."). But the parties disagree about how California law defined "parent" for purposes of section 48200 while Orange County was fronting the costs for A.S.'s placement in Cinnamon Hills.

In 2006, when Orange County began fronting those costs, no provision of the California Education Code specified that it provided the definition of "parent" for section 48200, either for students as a whole or for special education students in particular. In January 2009, the California legislature amended section 56028 of the California Education Code to

provide that, "[i]f a judicial decree or order identifies a spe-
cific person or persons under [Education Code section
56028(a)(1)-(4) of Part 30 ('Special Education Programs')] to
act as the 'parent' of a child or to make educational decisions
on behalf of a child, then that person or persons shall be deter-
mined to be the 'parent' for purposes of . . . Article 1 (com-
mencing with Section 48200) of Chapter 2 of Part 27." Cal.
Educ. Code. § 56028(b)(2). Thus, beginning in 2009, the defi-
nition of parent in section 56028 applies to section 48200, at
least under some circumstances. For purposes of this appeal,
the parties appear to agree that, as of January 2009, the
agency responsible for funding A.S.'s out-of-state placement
was the school district in which A.S.'s parent resided, *see* Cal.
Educ. Code § 48200, as "parent" was defined under section
56028.[3] But the parties dispute whether section 56028 sup-
plied a definition of parent for section 48200 before January
2009. If section 56028 does not specify the governmental
entity responsible for a special education student's education,
we must identify, under California law, the proper alternative
method for determining the responsible entity.[4]

We have found no controlling authority addressing this
issue, and what authority exists is in conflict. In *Orange
County Department of Education v. Student*, Nos.
2008120021 & 2009020130 (Cal. Office of Admin. Hearings
May 22, 2009), the OAH ruled that section 56028 *does* pro-
vide the definition of parent for section 48200 with respect to
students enrolled in special education programs. *See id.* ¶ 14
("Section 56028, which is found in the section of the code
regarding special education, sets forth definitions of 'parent'

---

[3]As discussed later, however, the parties disagree about whether A.S.
has a "parent" under section 56028, either before or after January 2009.

[4]Another provision in Part 30 may be relevant to the analysis. California
Education Code section 56041(a) specifies that "the district of residence
responsible for providing special education and related services to pupils
between the ages of 18 and 22 years, inclusive, shall be assigned [to] . . .
the last district of residence in effect prior to the pupil's attaining the age
of majority."

that must be read in conjunction with section 48200 when there is a question regarding which agency is responsible for providing special education to a particular child."); *see also id.* ¶¶ 22-23. The OAH has taken this position in a number of related proceedings, and CDE urges its adoption here.[5]

On the other hand, a federal district court in California has issued multiple decisions that have rejected, at least in part, the proposition that section 56028 supplies the definition of parent for purposes of section 48200. In *Newport-Mesa Unified School District v. R.R.*, No. 09-cv-980 (C.D. Cal. May 3, 2010), the district court concluded that the current (2009) version of section 56028 applies to section 48200, but found no basis to conclude that section 56028's definition of parent applied to section 48200 before 2009. The court noted that "CDE does not directly explain in its briefing the basis for its position that section 56028, prior to the 2009 amendment, supplied the definition of 'parent' for section 48200," adding that the OAH's "decisions also fail to explain why section 56028's unique definition is applicable to section 48200." *Id.* at 12-13. The court found the OAH's decisions unconvincing:

> The Court is persuaded for two reasons that, before the 2009 amendment, section 56028's definition of "parent" was not applicable to determinations of res-

---

[5]Several other OAH cases agree that section 56028 supplies the definition of parent for section 48200. *See, e.g.*, *Orange Cnty. Dep't of Educ. v. Student*, Nos. 2009010078 & 2009010529, at 6 (Cal. Office of Admin. Hearings June 2, 2009) ("Section 56028, which is found in the section of the code regarding special education, sets forth definitions of 'parent' that must be read in conjunction with section 48200 when there is a question regarding which agency is responsible for providing special education to a particular child."); *see also Student v. L.A. Unified Sch. Dist.*, No. 2009100740, at 11 (Cal. Office of Admin. Hearings Mar. 3, 2010); *Student v. L.A. Unified Sch. Dist.*, No. 2009100939, at 4 (Cal. Office of Admin. Hearings Jan. 29, 2010); *Student v. Orange Cnty. Dep't of Educ.*, Nos. 2009090943 & 2009100565, at 12 (Cal. Office of Admin. Hearings Nov. 30, 2009); *Parent v. Cal. Dep't of Mental Health*, No. 2009050920, at 11-12 (Cal. Office of Admin. Hearings Oct. 26, 2009).

idency under section 48200. First, section 56028 is within the definition section of the part of the California Education Code dealing specifically with special education programs. *See* Cal. Educ. Code §§ 56020-56035. To apply a special education provision to the determination of residency is inconsistent with the instruction in *Union School District* [*v. Smith*, 15 F.3d 1519, 1525 (9th Cir. 1994),] to use ordinary means of determining residency for special education students. Moreover, it seems illogical to apply a definition promulgated under a specific and distinct part of the California Education Code to other unrelated sections. Second, finding that section 56028 already applied to section 48200 prior to the 2009 amendment conflicts with the Legislative Counsel's Digest of the amendment. The 2009 amendment to section 56028 explicitly expanded the applicability of section 56028's definition of "parent" beyond the special education provisions to various other statutes, including section 48200. *Compare* Cal. Educ. Code § 56028(b)(2) (2009) *with* Cal. Educ. Code § 56028(b)(2) (2007). The Legislative Counsel's Digest explained that the amendment to subsection (b)(2) would "broaden the purposes for which the definition of 'parent' extends if a judicial decree or order identifies the person who is defined as a parent." 2008 Cal. Legis. Serv. Ch. 223 (A.B. 2057) (West). This indicates that the change to subsection (b)(2) was not a mere clarification of the definition's pre-existing applicability, but rather a broadening of its applicability beyond the special education provisions of the California Education Code.

*Id.* at 13-14. The district court reached a similar conclusion in *B.P. v. Orange County Department of Education*, No. 09-cv-

971, at 12-13 (C.D. Cal. May 3, 2010). Appeals from those decisions are currently pending in this court.[6]

### B.   Whether Ms. Hardy Is A.S.'s "Parent" Under § 56028

The second issue is whether Lori Hardy, who is A.S.'s "de facto parent" under Rule 5.534(e) of the California Rules of Court and is authorized to make educational decisions on A.S.'s behalf, satisfies section 56028's definition of "parent" from July 28, 2006, when A.S.'s placement at the out-of-state residential treatment facility began, through April 19, 2009. During that time, three different versions of section 56028 have been in effect. The 2005 version of section 56028 was effective from October 7, 2005, to October 9, 2007. The 2007 version was in effect between October 10, 2007, and the end of 2008. The 2009 — and current — version has been in effect since January 1, 2009.

Because the parties do not dispute that, for purposes of this case, section 56028 supplies the definition of parent for section 48200 as of January 1, 2009, we know we must decide whether Hardy qualifies as a parent for A.S. under section 56028 (2009). But only if section 56028 defines "parent" for section 48200 before January 2009 need we decide if Lori Hardy qualifies as a "parent" under the 2005 and 2007 versions of section 56028.[7]

Under the 2005 version of section 56028, a parent includes

---

[6]The appeal from the *Newport-Mesa* decision is docketed as Ninth Circuit No. 10-56057. The appeal from the *B.P.* decision is docketed as Ninth Circuit No. 10-56237.

[7]If section 56028 does not apply to section 48200, then we must determine whether Hardy, a de facto parent with educational decisionmaking authority, qualifies as a "parent" under 48200, however section 48200 defined that term.

(1) A person having legal custody of a child.

(2) Any adult pupil for whom no guardian or conservator has been appointed.

(3) A person acting in the place of a natural or adoptive parent, including a grandparent, stepparent, or other relative with whom the child lives. "Parent" also includes a parent surrogate.

(4) A foster parent if the authority of a parent to make educational decisions on the child's behalf has been specifically limited by court order in accordance with subsection (b) of Section 300.20 of Title 34 of the Code of Federal Regulations.

Cal. Educ. Code § 56028(a) (2005). Under the 2007 version of the statute, parent means any of the following:

(1) A biological or adoptive parent of a child.

(2) A foster parent if the authority of the biological or adoptive parents to make educational decisions on the child's behalf specifically has been limited by court order in accordance with Section 300.30(b)(1) or (2) of Title 34 of the Code of Federal Regulations.

(3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child.

(4) An individual acting in the place of a biological or adoptive parent, including a grandparent, stepparent, or other relative, with whom the child lives, or an individual who is legally responsible for the child's welfare.

(5) A surrogate parent who has been appointed pursuant to Section 7579.5 or 7579.6 of the Government

Code, and in accordance with Section 300.519 of Title 34 of the Code of Federal Regulations and Section 1439(a)(5) of Title 20 of the United States Code.

Cal. Educ. Code § 56028(a) (2007). Under the 2009 — and current — version of section 56028, parent means:

(1) A biological or adoptive parent of a child.

(2) A foster parent if the authority of the biological or adoptive parents to make educational decisions on the child's behalf specifically has been limited by court order in accordance with Section 300.30(b)(1) or (2) of Title 34 of the Code of Federal Regulations.

(3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child, including a responsible adult appointed for the child in accordance with Sections 361 and 726 of the Welfare and Institutions Code.

(4) An individual acting in the place of a biological or adoptive parent, including a grandparent, stepparent, or other relative, with whom the child lives, or an individual who is legally responsible for the child's welfare.

(5) A surrogate parent who has been appointed pursuant to Section 7579.5 or 7579.6 of the Government Code, and in accordance with Section 300.519 of Title 34 of the Code of Federal Regulations and Section 1439(a)(5) of Title 20 of the United States Code.

Cal. Educ. Code § 56028(a) (2009).

CDE contends that Hardy falls within the definition of parent under all three versions of section 56028, whereas Orange County contends that Hardy falls outside the definition of par-

ent in all three versions. We note that Hardy's role as "de facto parent" with education decisionmaking authority does not fall precisely within the language of any of the three versions of this statute. But we also note that the U.S. Department of Education clarified similar language in federal regulations by explaining that "[w]hat is important is the legal authority granted to individuals appointed by a court, and not the term used to identify them." *See* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46,540, 46,566 (Aug. 14, 2006) (describing similar language in 34 C.F.R. § 300.30(a)(3)).[8]

Unfortunately, the relevant California legislative history does not clarify this issue. *Compare* Cal. Assembly Comm. on Educ. Analysis of A.B. 2057 (Apr. 1, 2008) (saying that the addition of "responsible adult" in the 2009 version of the statute did not change but merely clarified the term "guardian" in the 2007 version), *with* 2008 Cal. Legis. Serv. ch. 223 (West) (A.B. 2057) (Legislative Counsel's Digest) (suggesting that the inclusion of "responsible adult" under the 2009 version expanded the existing definition of parent).

## IV.    Conclusion

The issues presented by the certified question — the extent to which section 56028 supplies a definition of parent under section 48200 and the scope of the definition of parent under the 2005, 2007 and current versions of section 56028 — are dispositive of the issues in this case. If section 56028 applies to section 48200, and if Hardy falls within the definition of

---

[8]We refer to the U.S. Department of Education's discussion of the term guardian in 34 C.F.R. § 300.30(a)(3) because the 2007 and 2009 versions of section 56028 are based on § 300.30, the federal regulation defining "parent" for purposes of the IDEA. *See* 2007 Cal. Legis. Serv. ch. 454 (West) (A.B. 1663) ("This bill would make various revisions generally conforming state law to federal requirements . . . .").

parent under any of the relevant versions of section 56028, then the Orange Unified School District is the California governmental entity responsible for funding some or all of A.S.'s education at the out-of-state residential treatment facility. If section 56028 does not apply to section 48200, or if Hardy does not fall within the definition of parent under any of the relevant versions of section 56028, then A.S. may not have a parent for purposes of determining the agency responsible for funding his education, and CDE itself may be financially responsible.

We are aware of no controlling precedent addressing the certified question or the two issues subsumed within it. Rather than decide these questions of California law ourselves, we certify them so that the California Supreme Court may provide an authoritative answer for these California governmental entities on this important issue of California law.

## V.   Administrative Information

If our request for decision is granted, we designate the Orange County Department of Education as the petitioner. *See* Cal. R. Ct. 8.548(b)(1).

The names and addresses of counsel for Orange County Department of Education are:

> Karen Lynn Van Dijk
> Jennifer C. Brown
> Best Best & Krieger, LLP
> Suite 1500
> 5 Park Plaza
> Irvine, CA 92614

The names and addresses of counsel for California Department of Education are:

Marsha A. Bedwell, General Counsel
Amy Bisson Holloway, Assistant General Counsel
Edmundo Aguilar, Deputy General Counsel
California Department of Education
Suite 5319
1430 N Street
Sacramento, CA 95814

The name and address of counsel for A.S., a minor, are:

Kathleen Loyer
Law Offices of Kathleen M. Loyer, Inc.
940 Calle Amanecer
Suite L
San Clemente, CA 92673

The name and address of counsel for Los Angeles Unified School District are:

Sue Ann Evans
Miller Brown & Dannis
Suite 1750
301 E. Ocean Blvd.
Long Beach, CA 90802

The name and address of counsel for Charter Oak Unified School District are:

Joyce E. Paul
Parker Covert LLP
Suite 204 - East Bui
17862 17th Street
Tustin, CA 92780

The California Office of Administrative Hearings is an unrepresented party. This court has no address on file.

As required by California Rule of Court 8.548(c) and (d), the Clerk of this Court shall submit copies of all relevant

briefs and an original and 10 copies of this Order to the Supreme Court of California with a certificate of service on the parties.

The case is withdrawn from submission and further proceedings in this court are stayed pending final action by the Supreme Court of California. The parties shall notify the Clerk of this Court within seven days after the California Supreme Court accepts or rejects certification, and again within seven days if the California Supreme Court renders an opinion. The panel retains jurisdiction over further proceedings.

**IT IS SO ORDERED.**