**ORANGE COUNTY DEPARTMENT OF EDUCATION, Plaintiff,**

**v.**

**A.S., a minor, et al, Defendants.**

**No. SACV 08–77 JVS(MLGx).**

United States District Court, C.D. California.

July 10, 2008.

David C. Larsen, Jennifer Brown, Karen Keating–Van Dijk, S. Daniel Harbottle, Rutan & Tucker, Costa Mesa, CA, for Plaintiff.

Kathleen Muraco Loyer, Kathleen M. Loyer Law Offices, San Clemente, CA, for minor, A.S.

Gabriel C. Vivas, California Dept. of Education, Sacramento, CA, for California Department of Education.

Kevin S. Reed, Diane H. Pappas, Donald A. Erwin, Los Angeles Unified School District, Office of the General Counsel, Los Angeles, CA, for Los Angeles Unified School District.

Jonathan Judd Mott, Joyce E. Paul, Parker & Covert LLP, Tustin, CA, for Charter Oak Unified School District.

## FINAL ORDER DENYING MOTION TO DISMISS

JAMES V. SELNA, District Judge.

### I. *BACKGROUND*

This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* Plaintiff Orange County Department of Education ("OCDE") appeals a decision by the California Office of Administrative Hearings ("OAH") in *Student v. Orange County Department of Education, et al.*, OAH Case No. N2006100050, October 31, 2007 (the "OAH Decision"),[1] finding OCDE responsible for implementing the Individualized Education Program ("IEP") of Defendant and Respondent, A.S.

It appears that the most salient facts alleged in OCDE's complaint are undisputed. A.S. is a minor, and dependent of the state of California, who is qualified to receive special education and related services under the IDEA. (Compl. ¶¶ 2, 20.) In 1999, the Juvenile Court for the County of Orange terminated the parental rights of A.S.'s natural parents, and in 2003, appointed a resident of the City of Orange as A.S.'s "de facto parent." (*Id.* ¶¶ 21–22.) Between 2003 and 2006, A.S. was placed in various treatment centers, shelters and educational facilities within California, all of which were operated by various counties, school districts, and/or state and local government agencies. (*Id.* ¶¶ 23–30.) In

---

1. Attached as Exhibit A to the Complaint.      (Docket No, 1, Ex. A.)

July, 2006, the Juvenile Court issued an order, approving a request by the Orange County Health Care Agency and A.S.'s IEP team, that A.S. be placed at Cinnamon Hills, a residential treatment facility located in the state of Utah. (*Id.* at ¶¶ 31–32.)

After reviewing the pertinent facts and law, the Administrative Hearing Officer found OCDE responsible for implementing A.S.'s IEP and funding his placement at Cinnamon Hills for the 2007–2008 school year. (OAH Decision, p. 10.) OCDE claims that this decision was in error, because California law fails to designate an entity responsible for "parentless dependents" placed in out-of-state residential treatment centers. Because no entity is named as the party responsible for minors in A.S.'s situation, OCDE claims that the State Educational Agency ("SEA"), here, Defendant California Department of Education ("CDE"), must retain responsibility for implementing and funding A.S.'s IEP.

CDE now moves to dismiss OCDE's complaint as to it, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. *LEGAL STANDARD*

A district court reviews the decision of the hearing officer under a modified *de novo* standard. *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1471–73 (9th Cir. 1993); *Glendale Unified Sch. Dist. v. Almasi,* 122 F.Supp.2d 1093, 1100 (C.D.Cal. 2000). The Court must consider the entire administrative record and any additional evidence as requested by the parties. 20 U.S.C. § 1415(i)(2).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In resolving a Rule 12(b)(6) motion, the Court must construe the Complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir.1998).

## III. *DISCUSSION*

While the Court must give due weight to the findings of fact and judgments regarding education policy in the OAH Decision, it reviews *de novo* conclusion of law. *See Ojai Unified,* 4 F.3d at 1471–72. In the instant motion, the question before the Court is whether the OCDE states a viable claim for relief when it argues that California law fails to designate an entity responsible for A.S.'s IEP, and therefore vests responsibility in the CDE by default. This is strictly a question of law and the Court is not required to give deference to the OAH Decision on this issue.

The parties agree that, in most instances, Cal. Educ.Code §§ 48200 and 48204 ("the residency statutes") determine which local educational agency ("LEA") is responsible for providing a student's free and appropriate public education ("FAPE"). (Mot at 8–9; OCDE's Opp'n at 7.) Further, the parties agree that those statutes do not specifically determine residency status for minors in A.S.'s situation and therefore, that this Court must look elsewhere for guidance as to which agency is responsible for his FAPE. (Mot. at 9; OCDE's Opp'n at 8.)

As to which statute *does* govern, however, the parties disagree, and neither has cited any authority that is explicitly applicable in the instant situation. Defendant Charter Oaks Unified School District (COUSD) and OCDE argue that the California statutes fail to delegate educational responsibility to a LEA for parentless dependent children such as A.S. (Compl. ¶ 48; OCDE Opp'n at 2–3; COUSD Opp'n at 8.) Because no designation of responsibility is given, they claim that, by default, CDE takes responsibility for A.G.'s FAPE. In contrast, CDE argues that it cannot possibly be the entity responsible for implementing and funding A.S.'s IEP because "other pertinent statutes" designate the OCDE as the responsible authority.

The Court finds OCDE and COUSD's argument more persuasive.

### A. Application of the California Welfare & Institutions Code

CDE argues that because residency statutes provided in the Education Code do not apply for students in A.S.'s situation, Cal. Welf. & Inst.Code § 17.1(e) is determinative.

■ Section 17.1 provides rules for the determination of the residence of a minor under the Welfare Code.[2] However, there is no suggestion anywhere in the Welfare Code that the general provisions of this code apply to determinations of residency made in any context other than those governed by the Welfare Code, or, more specifically, to determinations of residence made for purposes of assigning responsi-

bility for providing a child's FAPE. The CDE has not provided any explanation or authority for its vague assertion that section 17 is applicable in this context. Further section 5 of the Welfare Code expressly states that "the general provisions" set forth at the beginning of the Welfare Code, which includes section 17, "govern the construction of *this* code." Cal. Welf. & Inst.Code § 5 (emphasis added).[3]

■ Providing further support for this position is the fact that the former version of Education Code § 48200 specifically indicated that "[r]esidency, for the purpose of attendance in the public schools, shall be determined by Section 17.1 of the Welfare and Institutions Code." Cal. Educ.Code § 48200 (1986) (amended 1987). This language was stricken from the code when this section was last revised, so that the current section makes no reference to section 17.1, or any other provision of the Welfare Code. When the Legislature amends a statute, the Court "will not presume lightly that it engaged in an idle act." *Elsner v. Uveges,* 34 Cal.4th 915, 935, 22 Cal.Rptr.3d 530, 102 P.3d 915 (2004) (internal quotation marks omitted). Rather, the most rational assumption is that, by reworking the language of the former statute, the Legislature intended to change the law. *See id.*

CDE has presented no authority to support its position that section 17.1 of the Welfare Code is applicable in this context, and the Court finds that it does not govern a determination of residency for purposes

---

2. Specifically, § 17.1(e) states that, for purposes of determining the residence of a minor, "[i]f the child has been declared permanently free from the custody and control of his or her parents, his or her residence is the county in which the court issuing the order is situated." Cal. Welf. & Inst.Code § 17.1(e).

3. While not binding authority, the Court also notes that a decision by the California Special Education Hearing Office, *Student v. Placentia–Yorba Linda Unified School District,* SN05–01001 (June, 2005), also concluded that the Welfare residency statute, § 17.1, has no application in determining which LEA is responsible for providing a student's FAPE.

of deciding the entity responsible for overseeing and funding A.S.'s FAPE.

**B. Application of the Relevant Special Education Local Plan Area**

CDE argues that, in California, each local district or county office of education is required to participate in a special education local plan area ("SELPA"), that establishes (1) the entity responsible for each individual with a disability; and (2) either a local agency or administrative entity to receive and distribute funds for special education. (Mot. at 10–11.) Then, without any explanation or authority, CDE draws the conclusion that within OCDE's SELPA, "the only possible LEA responsible for [A.S.'s] education placement at Cinnamon Hills" is OCDE. While the Court is not aware of the basis for this assertion, it also appears to be irrelevant.

■ The statutory scheme which requires OCDE to maintain a SELPA, Education Code § 56195 *et seq*, only describes a district's responsibility for "determining the responsibility of participating agencies for the education of each individual with exceptional needs *residing* in the special education local plan area." *Id.*, § 56195.1(b)(2) (emphasis added). Thus, as the OCDE argues, the designation of authority within its SELPA is irrelevant unless and until it can be demonstrated that A.S. is an individual that *resides* in the local plan area for purposes of this statute. Save its reliance on Welfare Code § 17.1, CDE makes no showing regarding A.S.'s legal residency. Thus, there is no authority to support CDE's claim that, in the absence of a state statute delegating a county of residence for A.S., OCDE's SELPA designates OCDE as the entity responsible for providing A.S. with a FAPE.

**C. In the Absence of an Alternative Statutory Designation, Responsibility for Providing a FAPE resides with the CDE**

■ Having found that the California statutes do not delegate responsibility for providing A.S. with a FAPE to any entity, the Court is persuaded by COUSD and OCDE's argument that the responsibility defaults to the CDE.

20 U.S.C. §§ 1412(a)(11)(A) states that, in general

> [t]he State educational agency is responsible for ensuring that—
>
> (i) the requirements of this subchapter are met;[4] and
>
> (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State or local agency—
>
> (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities . . .

This section has been interpreted to mean that, "ultimately, it is the SEA's responsibility to ensure that each child within its jurisdiction is provided a free appropriate public education." *Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir.1997) (interpreting the same language that now appears as § 1412(a)(11)(A), but which formerly appeared in § 1412(6)). Thus, it is proper for a court to assign responsibility to a SEA where a student's existing IEP is inadequate, because the IDEA exhibits "[b]oth a general, congressional perception of the state's primary responsibility to provide a publicly-supported education for all children and a specific intent to centralize this responsibility" in a single state agen-

---

**4.** The pertinent Subchapter is Subchapter II—Assistance for Education of All Children with Disabilities—and encompasses 20 U.S.C. §§ 1411–1427.

cy. *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 696 (3rd Cir.1981).

Similarly, the Supreme Court held in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), that a "court may order a State to provide services directly to a disabled child where the local agency has failed to do so." *Id.* at 330, 108 S.Ct. 592 (affirming and modifying on other grounds, *Doe v. Maher*, 793 F.2d 1470 (9th Cir.1986)); *see also Todd D. v. Andrews*, 933 F.2d 1576, 1583 (11th Cir.1991) (same). Thus, there is ample authority to support OCDE's claim that, in the absence of a statute delegating responsibility for a student's education to a local entity, the State is, by default, the party most appropriately charged with the task. *See Honig*, 484 U.S. at 330, 108 S.Ct. 592; *Todd D.*, 933 F.2d at 1583; *Gadsby*, 109 F.3d at 953.

The conclusion that this theory extends to make the SEA responsible for A.S.'s FAPE is buttressed by the advisory letters from the United States Office of Special Education Programs ("OSEP") cited in OCDE's opposition to this motion, *Letter to Covall*, 48 IDELR 106 (OSEP 2006), and *Letter to Kerr*, 31 IDELR 81 (OSEP 1999).

In *Letter to Covall*, the OSEP concluded that, "[f]or a child placed outside the State by an educational or non-educational State or local agency, the State initiating the placement . . . generally is responsible for ensuring that the child's IEP is developed and implemented . . . because the obligation to make FAPE available covers all children with disabilities residing in the State." 48 IDELR 106. The OSEP went on to explain that "[d]etermining the specific school district or LEA in a State that is responsible for the cost of a residential placement is a matter of State law, policy or practice," because while the "IDEA does not address which LEA in a State is responsible for the cost of a placement . . .

the SEA must exercise general supervision over all educational programs for children with disabilities residing in the State, and has ultimate responsibility for ensuring the availability of FAPE to these children." *Id.*

Similarly, in *Letter to Kerr*, the OSEP advised that the cost of residential placements under the IDEA is a matter of State law, which generally allocates responsibility for the provision of FAPE based on the school district in which the child's parents reside. 31 IDELR 81. However, regardless of whether, or how a State chooses to allocate responsibility for FAPE, *Letter to Kerr* specifically stated that the SEA must at all times "exercise general supervision over all educational programs for children with disabilities residing in the State, and has the ultimate responsibility for ensuring the availability of FAPE to these children." *Id.*

As demonstrated by the above authorities, the CDE is the entity ultimately responsible for ensuring that the broad goals of the IDEA are met in California. Here, because California law fails to provide an alternate method of allocating responsibility for A.S.'s FAPE, the ultimate responsibility for providing it rests most appropriately with the CDE itself.

## IV. *CONCLUSION*

For the foregoing reasons, the Court finds that the CDE is the entity responsible for implementing and funding A.S.'s FAPE. Accordingly, the CDE's motion to dismiss OCDE's complaint is denied.