# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ORANGE COUNTY DEPARTMENT OF
EDUCATION,
        *Petitioner-Appellee,*

      v.

CALIFORNIA DEPARTMENT OF
EDUCATION,
        *Respondent-Appellant,*

      and

A. S., a minor; LOS ANGELES
UNIFIED SCHOOL DISTRICT; CHARTER
OAK UNIFIED SCHOOL DISTRICT;
CALIFORNIA OFFICE OF
ADMINISTRATIVE HEARINGS,
        *Respondents.*

No. 09-56192

D.C. No.
8:08-cv-00077-JVS-
MLG

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
October 8, 2010—Pasadena, California
Submission Withdrawn May 18, 2011
Resubmitted December 8, 2011

Filed December 28, 2011

Before: Raymond C. Fisher and Jay S. Bybee,
Circuit Judges, and Edward F. Shea, District Judge.*

Opinion by Judge Fisher;
Partial Concurrence and Partial Dissent by Judge Bybee

---

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

**COUNSEL**

Marsha A. Bedwell, General Counsel, Amy Bisson Holloway, Assistant General Counsel, Michael E. Hersher, Deputy General Counsel, Edmundo Aguilar (argued), Deputy General Counsel, and Len Garfinkel, Deputy General Counsel, California Department of Education, Sacramento, California, for the respondent-appellant.

Karen Van Dijk (argued) and Jennifer C. Brown, Best Best & Krieger, LLP, Irvine, California, for the petitioner-appellee.

Kathleen M. Loyer (argued), Law Offices of Kathleen M. Loyer, San Clemente, California, for respondent A.S., a minor.

---

**OPINION**

FISHER, Circuit Judge:

We hold as a matter of California law that the California agency responsible for funding a special education student's education at an out-of-state residential treatment facility is the school district in which the student's parent, as defined by California Education Code section 56028, resides. We hold that A.S., the student whose education is at issue, had no "parent" under the 2005 version of section 56028. Thus, from July 28, 2006, when A.S. was placed at the out-of-state facility, until October 9, 2007, when an amended version of section 56028 took effect, California law did not designate any educational agency as responsible for A.S.'s education. The California Department of Education (CDE) was therefore responsible by default. We hold that A.S. did have a "parent" under the 2007 and 2009 versions of section 56028. CDE therefore was not responsible for A.S.'s out-of-state education after October 10, 2007, when the 2007 version of section

56028 took effect. We accordingly affirm in part and reverse in part the district court's judgment. The district court properly held CDE responsible for A.S.'s education from July 28, 2006 to October 9, 2007. The district court erred, however, by holding CDE responsible for A.S.'s education between October 10, 2007 and April 19, 2009.

## I.

At all relevant times, A.S., a California minor, was eligible for special education services under the Individuals with Disabilities Education Act (IDEA) as an emotionally disturbed child. Joint Statement of Stipulated Facts ¶ 10. Since 1996, A.S. has been a dependent of the Orange County Juvenile Court, in accordance with California Welfare and Institutions Code section 300 *et seq. Id.* ¶ 1. That court terminated the parental rights of A.S.'s biological parents, including their educational rights, in 1999. *Id.* ¶ 5.

Lori Hardy was A.S.'s foster parent from approximately February 2000 to April 2004. *Id.* ¶ 6. Hardy is a resident of the City of Orange and at all relevant times resided within the Orange Unified School District. *Id.* ¶ 8. In April 2003, the juvenile court appointed Hardy as A.S.'s de facto parent. *Id.* ¶ 7. *See* Cal. R. Ct. 5.502(10); Cal. R. Ct. 5.534(e). It is undisputed that at all relevant times Hardy was authorized to make educational decisions on A.S.'s behalf. Joint Statement of Stipulated Facts ¶ 9.

In 2006, A.S.'s individualized education program (IEP) team, which had been convened by the Orange County Department of Education ("Orange County" or "the County"), referred A.S. to the Orange County Health Care Agency (OCHCA) for a mental health assessment. *Id.* ¶ 38. OCHCA recommended that A.S. be placed at Cinnamon Hills, a residential treatment facility in Utah. *Id.* ¶¶ 42, 47. The IEP team agreed with OCHCA's recommendation, and the juvenile court issued an order approving the placement. *Id.* ¶¶ 47, 50.

A.S. was placed at Cinnamon Hills beginning July 28, 2006. *Id.* ¶ 53. Without conceding financial responsibility, Orange County fronted the costs of A.S.'s educational services at Cinnamon Hills from that date through April 19, 2009.

In October 2006, A.S. filed a request for a special education due process hearing. After mediation resolved all other issues, the only issue for the hearing was which public agency was responsible for funding A.S.'s placement at Cinnamon Hills. Because of A.S.'s various placements,[1] Orange County, Los Angeles Unified School District, Charter Oaks Unified School District and CDE were all identified as agencies possibly responsible for A.S.'s educational funding. In October 2007, the California Office of Administrative Hearings (OAH) issued an administrative decision naming Orange County the responsible agency. *See Student v. Orange Cnty. Dep't of Educ.*, No. 2006100050, at 10 (Cal. Office of Admin. Hearings Oct. 31, 2007).[2]

Orange County appealed that decision to the United States District Court for the Central District of California, arguing

---

[1]Between September 2004 and his placement at Cinnamon Hills in July 2006, A.S. was placed in several facilities within California, including, among others, the San Gabriel Children's Center, a licensed children's institution, where A.S. was provided special educational services by the Charter Oaks Unified School District, and the Orangewood Children's Home, a temporary shelter care facility and licensed group home, where A.S. received special education services at William Lyon School by the Orange County Department of Education. Joint Statement of Stipulated Facts ¶¶ 11-32. During the weeks just prior to A.S.'s placement at Cinnamon Hills, A.S. was placed in Gateways Hospital in Los Angeles on a medical, psychiatric stay. *Id.* ¶¶ 45, 53. The hospital is located within the Los Angeles Unified School District. *Id.* ¶ 45.

[2]At the time, CDE argued that Orange County was the agency responsible for A.S.'s education. CDE has now abandoned that position, arguing that the Orange Unified School District, which is not a party to this action, is the responsible agency. CDE is not the only entity that has offered inconsistent answers to the state-law questions presented in this appeal. The OAH has also done so. *See* Brief of Respondent-Appellant 7.

that CDE is responsible for A.S.'s out-of-state education. The County argued that California law failed to make any public agency responsible for providing special education programs to children like A.S., who have no parents and are placed in residential treatment centers outside California. The County therefore argued that CDE should be held responsible by default.

CDE moved to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied that motion in a published decision, *Orange Cnty. Dep't of Educ. v. A.S.*, 567 F. Supp. 2d 1165 (C.D. Cal. 2008), and then granted Orange County's motion for summary judgment. The court agreed with the County that California law failed to make any public agency responsible for A.S.'s education and deemed CDE responsible by default. CDE timely appealed to this court.

After oral argument, we certified the following question to the California Supreme Court under Rule 8.548 of the California Rules of Court:

> Whether under California law the school district responsible for the costs of a special education student's education while the student is placed at an out-of-state residential treatment facility is the district in which the student's de facto parent, who is authorized to make educational decisions on behalf of the student, resides.

*Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 650 F.3d 1268, 1268-69 (9th Cir. 2011) (order). We certified this question because "deciding it would require us to answer novel and difficult questions of California law about the relationships among multiple provisions of the California Education Code and among numerous California governmental entities." *Id.* at 1269. The California Supreme Court, however, declined our request for certification without explanation.

## II.

We must decide, as a matter of California law, which California agency is responsible for funding A.S.'s educational placement in an out-of-state residential treatment facility. We first address whether the responsible agency is the school district in which the student's parent, as defined by California Education Code section 56028, resides. We then address whether Hardy, as A.S.'s de facto parent and the person authorized to make educational decisions on A.S.'s behalf, falls within the definition of parent under the 2005, 2007 and 2009 versions of section 56028.[3]

---

[3]We review de novo a district court's grant or denial of summary judgment. *See Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1047 (9th Cir. 2010). In reviewing a decision of the Office of Administrative Hearings applying the IDEA, "we give 'due weight' to judgments of education policy," but review questions of law de novo. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310-11 (9th Cir. 1987); *see also Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-72 (9th Cir. 1993). "The district court's interpretation of California state law is also reviewed de novo; our goal is to ascertain and apply California law." *Ellis v. City of San Diego*, 176 F.3d 1183, 1188 (9th Cir. 1999).

Under California law, a question of statutory interpretation begins "with the statute's plain language, as the words the Legislature chose to enact are the most reliable indicator of its intent." *In re Corrine W.*, 198 P.3d 1102, 1106 (Cal. 2009). "The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." *People v. King*, 133 P.3d 636, 639 (Cal. 2006) (quoting *Fitch v. Select Prods. Co.*, 115 P.3d 1233, 1236 (Cal. 2005)) (internal quotation marks omitted). When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to "various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." *Id.* (quoting *People v. Yartz*, 123 P.3d 604, 608-09 (Cal. 2005)) (internal quotation marks omitted); *see also Mejia v. Reed*, 74 P.3d 166, 170 (Cal. 2003).

### A.  Whether Section 56028's Definition of Parent Applies to Section 48200

1.  *Background*

**[1]** The parties agree that California Education Code section 48200 establishes the general rule under California law that the school district responsible for the education of a child between the ages of six and 18 is the district in which the child's "parent or legal guardian" resides. *See Katz v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 11 Cal. Rptr. 3d 546, 553 (Ct. App. 2004) ("Section 48200 embodies the general rule that parental residence dictates a pupil's proper school district."). The parties disagree, however, about how California law defined "parent" for purposes of section 48200 while Orange County was fronting the costs for A.S.'s placement in Cinnamon Hills.

**[2]** In 2006, when Orange County began fronting those costs, no provision of the California Education Code specified that it provided the definition of parent for section 48200, either for students as a whole or for special education students in particular. In January 2009, the California legislature amended section 56028 of the California Education Code to provide that, "[i]f a judicial decree or order identifies a specific person or persons under [Education Code section 56028(a)(1)-(4) of Part 30 ('Special Education Programs')] to act as the 'parent' of a child or to make educational decisions on behalf of a child, then that person or persons shall be determined to be the 'parent' for purposes of . . . Article 1 (commencing with Section 48200) of Chapter 2 of Part 27." Cal. Educ. Code. § 56028(b)(2). Thus, beginning in 2009, the definition of parent in section 56028 indisputably applies to section 48200, at least under some circumstances. For purposes of this appeal, the parties agree that, as of January 2009, the agency responsible for funding A.S.'s out-of-state placement was the school district in which A.S.'s parent resided, *see* Cal. Educ. Code § 48200, as "parent" was defined under section

56028.[4] The parties dispute, however, whether section 56028 supplied a definition of parent for section 48200 before January 2009. If section 56028 does not specify the governmental entity responsible for a special education student's education, we must identify, under California law, the proper alternative method for determining the responsible entity.

We have found no controlling authority addressing this issue, and what authority exists is in conflict. In *Orange County Department of Education v. Student*, Nos. 2008120021 & 2009020130 (Cal. Office of Admin. Hearings May 22, 2009), the OAH ruled that section 56028 *does* provide the definition of parent for section 48200 with respect to students enrolled in special education programs. *See id.* ¶ 14 ("Section 56028, which is found in the section of the code regarding special education, sets forth definitions of 'parent' that must be read in conjunction with section 48200 when there is a question regarding which agency is responsible for providing special education to a particular child."); *see also id.* ¶¶ 22-23. The OAH has taken this position in a number of related proceedings, and CDE urges its adoption here.[5]

---

[4]As discussed later, however, the parties disagree about whether A.S. has a "parent" under section 56028, either before or after January 2009.

[5]Several other OAH cases agree that section 56028 supplies the definition of parent for section 48200. *See, e.g.*, *Orange Cnty. Dep't of Educ. v. Student*, Nos. 2009010078 & 2009010529, at 6 (Cal. Office of Admin. Hearings June 2, 2009) ("Section 56028, which is found in the section of the code regarding special education, sets forth definitions of 'parent' that must be read in conjunction with section 48200 when there is a question regarding which agency is responsible for providing special education to a particular child."); *see also Student v. L.A. Unified Sch. Dist.*, No. 2009100740, at 11 (Cal. Office of Admin. Hearings Mar. 3, 2010); *Student v. L.A. Unified Sch. Dist.*, No. 2009100939, at 4 (Cal. Office of Admin. Hearings Jan. 29, 2010); *Student v. Orange Cnty. Dep't of Educ.*, Nos. 2009090943 & 2009100565, at 12 (Cal. Office of Admin. Hearings Nov. 30, 2009); *Parent v. Cal. Dep't of Mental Health*, No. 2009050920, at 11-12 (Cal. Office of Admin. Hearings Oct. 26, 2009).

On the other hand, a federal district court in California has issued multiple decisions that have rejected, at least in part, the proposition that section 56028 supplies the definition of parent for purposes of section 48200. In *Newport-Mesa Unified School District v. R.R.*, No. 09-cv-980 (C.D. Cal. May 3, 2010), the district court concluded that the current (2009) version of section 56028 applies to section 48200, but found no basis to conclude that section 56028's definition of parent applied to section 48200 before 2009. The court noted that "CDE does not directly explain in its briefing the basis for its position that section 56028, prior to the 2009 amendment, supplied the definition of 'parent' for section 48200," adding that the OAH's "decisions also fail to explain why section 56028's unique definition is applicable to section 48200." *Id.* at 12-13. The court found the OAH's decisions unconvincing:

> The Court is persuaded for two reasons that, before the 2009 amendment, section 56028's definition of "parent" was not applicable to determinations of residency under section 48200. First, section 56028 is within the definition section of the part of the California Education Code dealing specifically with special education programs. *See* Cal. Educ. Code §§ 56020-56035. To apply a special education provision to the determination of residency is inconsistent with the instruction in *Union School District* [*v. Smith*, 15 F.3d 1519, 1525 (9th Cir. 1994),] to use ordinary means of determining residency for special education students. Moreover, it seems illogical to apply a definition promulgated under a specific and distinct part of the California Education Code to other unrelated sections. Second, finding that section 56028 already applied to section 48200 prior to the 2009 amendment conflicts with the Legislative Counsel's Digest of the amendment. The 2009 amendment to section 56028 explicitly expanded the applicability of section 56028's definition of "parent" beyond the special education provisions to vari-

ous other statutes, including section 48200. *Compare* Cal. Educ. Code § 56028(b)(2) (2009) *with* Cal. Educ. Code § 56028(b)(2) (2007). The Legislative Counsel's Digest explained that the amendment to subsection (b)(2) would "broaden the purposes for which the definition of 'parent' extends if a judicial decree or order identifies the person who is defined as a parent." 2008 Cal. Legis. Serv. Ch. 223 (A.B. 2057) (West). This indicates that the change to subsection (b)(2) was not a mere clarification of the definition's pre-existing applicability, but rather a broadening of its applicability beyond the special education provisions of the California Education Code.

*Id.* at 13-14. The district court reached a similar conclusion in *B.P. v. Orange County Department of Education*, No. 09-cv-971, at 12-13 (C.D. Cal. May 3, 2010). Appeals from those decisions are currently pending in this court.

2. *The Definitions of Parent in the 2005 and 2007 Versions of Section 56028 Apply to Section 48200*

Whether the definitions of parent in the 2005 and 2007 versions of section 56028 apply to section 48200 with respect to special education students is a close question. There are several reasons to believe that these definitions of parent do not apply. First, section 56028 is found in Part 30 of the Education Code, whereas section 48200 is located in Part 27 of the Code. The primary purpose of section 56028 is to provide a definition of parent for Part 30. *See* Cal. Educ. Code § 56020 ("As used in *this part*, the definitions prescribed by this article apply unless the context otherwise requires." (emphasis added)).[6] Second, if section 56028 supplies a definition of

---

[6]We assume that the primary purpose of section 56028 is to identify a person who will participate in a special education student's educational planning, development of an IEP and attainment of a free appropriate public education, or FAPE.

parent for section 48200, but only with respect to special education students, then the term parent in section 48200 has one meaning for students in special education programs (the definition supplied by section 56028) and another meaning for other students. Absent a statutory basis for holding otherwise, we would expect the term parent, as used in section 48200, to have a uniform meaning for all California students. *Cf. Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1525 & n.1 (9th Cir. 1994) (agreeing with CDE's contention that "residency for special education coverage purposes is measured by the normal standards"). Third, we find no explicit statutory basis for applying section 56028 to section 48200 before 2009.

[3] On balance, however, we are persuaded that the California legislature intended the definition of parent in the 2005 and 2007 versions of section 56028 to apply to section 48200 for students receiving special education. Although section 56028 is found in the special education programs part of the Education Code and section 48200 is found in the general education part of the Code, not using section 56028's definition of parent for all aspects of a special education student's education would lead to nonsensical results. For instance, if section 56028 does not apply to section 48200, then a student may have a "parent" for special education purposes but not for residency purposes under section 48200. The legislature, which aimed to implement the special education programs consistent with the IDEA and sought to place the educational decisionmaking and funding responsibility at the local level, presumably did not intend such a result.

This conclusion is bolstered by section 56041 of the Education Code. Section 56041 deals expressly with the question of which public agency is responsible for providing an education to a special education student between the ages of 18 and 22. It provides that, for students between ages 18 and 22, the school district responsible for providing an education is the district in which the student's parent resides. *See* Cal. Educ. Code § 56041(a). Because section 56041 is located within

Part 30 of the Code, section 56041 necessarily incorporates section 56028's definition of parent, as all parties agree. *See id.* § 56020.

**[4]** On its face, of course, section 56041 applies only to students between the ages of 18 and 22, not younger students. But section 56041 demonstrates the legislature's intent that the school district responsible for a student's special education is the district in which the student's parent — as defined in section 56028 — resides. Holding otherwise with respect to younger pupils would produce inconsistent and even absurd results, because section 56028 would determine the agency responsible for a special education student over 18, but not for one under 18. It is highly improbable that the California legislature intended that, when a student turned 18, a different agency would suddenly become responsible for the student's education. *See In re Conservatorship of Whitley*, 241 P.3d 840, 853 (Cal. 2010) ("[A] statute should not be literally construed if to do so would lead to absurd results or defeat the statute's evident purpose.").

Such a result is not only improbable but also inconsistent with the purposes of section 56041. The legislature designed section 56041 to ensure funding continuity: the public agency responsible for a student's special education before and after the child reaches the age of 18 should be the same, unless the student's parents relocate. As the California Superior Court has explained, the purpose of section 56041 is to require "the local school districts where the pupils' parents reside . . . to *remain* responsible for the pupils' special education" after the student turns 18. *Sierra Sands Unified Sch. Dist. v. Cal. State Bd. of Educ.*, No. S-1500-CV-248848, 39 IDELR 70 (Cal. Super. Ct. May 13, 2003) (emphasis added). "Section 56041 is a provision to *maintain* funding responsibilities for the adult student's education with the California school district within which the parents reside." *Sierra Sands Unified Sch. Dist. v. Student*, No. 2198 (Cal. Special Educ. Hearing Office Oct. 22, 2002) (emphasis added); *see also Student v. Berkeley*

*Unified Sch. Dist.*, No. 1989 (Cal. Special Educ. Hearing Office Nov. 6, 2003) ("Section 56041 is a provision to *maintain* funding responsibilities for the adult student's education with the California school district within which the parents reside." (emphasis added)).[7] The legislative priority of funding continuity can be achieved only if section 56028's definition of parent applies to section 48200 for special education students under the age of 18.

**[5]** Thus, although a close and difficult question, we hold that the 2005 and 2007 versions of section 56028 supplied the definition of parent for section 48200 for purposes of determining the agency responsible for providing a student's special education. This interpretation of the Education Code is consistent with the decisions of the Office of Administrative Hearings. *See, e.g., Orange Cnty. Dep't of Educ.*, Nos. 2008120021 & 2009020130, *supra*, at ¶ 14.[8]

### B. Whether Ms. Hardy Meets the Definition of Parent

**[6]** The remaining issue is whether Lori Hardy, as A.S.'s de facto parent under Rule 5.534(e) of the California Rules of Court and the person authorized to make educational decisions on A.S.'s behalf, satisfied section 56028's definition of parent from July 28, 2006, when A.S.'s placement at the out-

---

[7]The decisions of the California Special Education Hearing Office are available at http://www3.scoe.net/speced/seho/seho_search/sehoSearch.cfm.

[8]In his dissent, Judge Bybee notes that the California legislature amended section 56028 in 2009 to extend its definition of parent to other portions of the Code, including, in specific instances, section 48200. Judge Bybee argues that, if section 56028's definition applied to section 48200 before the 2009 amendment, then the 2009 amendment is superfluous — a conclusion contrary to basic rules of statutory construction. This is a fair point, but it is equally plausible that the 2009 amendment merely clarified rather than expanded the application of section 56028's definition of parent. This is a case in which we must balance indications of legislative intent that point in different directions.

of-state residential treatment facility began, through April 19, 2009. During that time, three different versions of section 56028 were in effect. The 2005 version of section 56028 was effective from October 7, 2005 to October 9, 2007. The 2007 version was in effect from October 10, 2007 to the end of 2008. The 2009 — and current — version has been in effect since January 1, 2009. We address the three versions of section 56028 in turn, beginning with the most recent iteration of the statute.

1.  *The 2009 Version of Section 56028*

The parties do not dispute that, for purposes of this case, section 56028 supplies the definition of parent for section 48200 as of January 1, 2009. We therefore must decide whether Hardy qualifies as a parent for A.S. under the 2009 version of section 56028. Under the 2009 version of section 56028, parent means:

(1) A biological or adoptive parent of a child.

(2) A foster parent if the authority of the biological or adoptive parents to make educational decisions on the child's behalf specifically has been limited by court order in accordance with Section 300.30(b)(1) or (2) of Title 34 of the Code of Federal Regulations.

(3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child, including a responsible adult appointed for the child in accordance with Sections 361 and 726 of the Welfare and Institutions Code.

(4) An individual acting in the place of a biological or adoptive parent, including a grandparent, stepparent, or other relative, with whom the child lives, or an individual who is legally responsible for the child's welfare.

(5) A surrogate parent who has been appointed pursuant to Section 7579.5 or 7579.6 of the Government Code, and in accordance with Section 300.519 of Title 34 of the Code of Federal Regulations and Section 1439(a)(5) of Title 20 of the United States Code.

Cal. Educ. Code § 56028(a) (2009).

Hardy does not meet the first of these definitions. She is not A.S.'s biological or adoptive parent. Nor does she meet the second definition. Although Hardy at one time served as A.S.'s foster parent, she ceased serving in that capacity in 2004, two years before A.S.'s placement at Cinnamon Hills.

Hardy also does not satisfy the fourth definition, although this subsection perhaps presents a closer question. The California Rules of Court state that a de facto parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." Cal. R. Ct. 5.502(10). Here, Hardy has in some respects "act[ed] in the place of a biological or adoptive parent." But CDE does not contend — and the record does not show — that Hardy actually assumed the role as A.S.'s parent — in the comprehensive sense suggested by section 56028 — during the period in question. Hardy also is not A.S.'s relative, and A.S. does not reside with her. She therefore does not fall within the fourth definition.

Nor does Hardy fall within the fifth definition. Under both federal and California law, a surrogate parent perhaps should have been appointed for A.S. *See* 34 C.F.R. § 300.519 (requiring a public agency to appoint a surrogate parent — to represent a child in all matters relating to the identification, evaluation and educational placement of the child and the provision of a free appropriate public education to the child — when "[n]o parent . . . can be identified" or "[t]he child is a

ward of the State"); Cal. Gov't Code §§ 7579.5-7579.6 (implementing the requirements of § 300.519). As a practical matter, moreover, it appears that Hardy fulfilled many of the functions that would have been performed by a surrogate parent had one been appointed. It appears from the stipulated facts, for instance, that Hardy participated in A.S.'s special education planning, including the 2006 decision to place A.S. at Cinnamon Hills. Joint Statement of Stipulated Facts ¶¶ 44, 46. Had a surrogate parent been appointed, Hardy likely would have been chosen. But Hardy was not actually appointed as A.S.'s surrogate parent under California Government Code sections 7579.5 and 7579.6 or in accordance with 34 C.F.R. § 300.519. She was not, therefore, a surrogate parent for purposes of the 2009 version of section 56028.

**[7]** We hold, however, that Hardy was a parent for purposes of the 2009 version of section 56028 because she was "[a] guardian . . . authorized to make educational decisions for the child." Cal. Educ. Code § 56028(a)(3) (2009). That conclusion is consistent with the plain language of section 56028. Under California law, we give the words of a statute their ordinary and usual meaning. *See City of Santa Monica v. Gonzalez*, 182 P.3d 1027, 1035-36 (Cal. 2008). The dictionary defines "guardian" as "[o]ne that guards, watches over, or protects," or, in law, as "[o]ne who is legally responsible for the care and management of the person or property of an incompetent or a minor." American Heritage Dictionary of the English Language 779 (4th ed. 2000); *see also* Webster's Third New International Dictionary 1007 (2002) (defining "guardian" as including "one who has or is entitled or legally appointed to the care and management of the person or property of another (as a minor or person incapable of managing his own affairs"). Black's Law Dictionary defines "guardian" as "[o]ne who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." Black's Law Dictionary 774 (9th ed. 2009). Black's adds, "*A guardian may be appointed* either for all purposes or *for a specific purpose*."

*Id.* (emphasis added). Here, Hardy was appointed by the juvenile court to have legal authority for making educational decisions on A.S.'s behalf. That made her a guardian as that term is commonly understood.[9] Hardy thus was a parent for purposes of section 48200 on January 1, 2009, when the 2009 version of section 56028 took effect.

2.  *The 2007 Version of Section 56028*

Under the 2007 version of the statute, parent means any of the following:

(1) A biological or adoptive parent of a child.

(2) A foster parent if the authority of the biological or adoptive parents to make educational decisions on the child's behalf specifically has been limited by court order in accordance with Section 300.30(b)(1) or (2) of Title 34 of the Code of Federal Regulations.

(3) A guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child.

(4) An individual acting in the place of a biological or adoptive parent, including a grandparent, steppar-

---

[9]This conclusion is consistent with the IDEA regulations upon which section 56028 is based. *See* 34 C.F.R. § 300.30(a)(3) (defining "parent" to include "[a] guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child"); 2007 Cal. Legis. Serv. ch. 454 (A.B. 1663) (West) (explaining that the 2007 amendments to section 56028 were enacted to conform section 56028 to the federal IDEA regulations); Assistance to States for the Education of Children With Disabilities, 71 Fed. Reg. 46,540, 46,566 (Aug. 14, 2006) (explaining that, in determining who is a "guardian" (and hence a "parent") for purposes of § 300.30(a)(3), "[w]hat is important is the legal authority granted to individuals appointed by a court, and not the term used to identify them"). Federal regulators, and hence the California legislature, employed a functional rather than a formal definition of guardian.

ent, or other relative, with whom the child lives, or an individual who is legally responsible for the child's welfare.

(5) A surrogate parent who has been appointed pursuant to Section 7579.5 or 7579.6 of the Government Code, and in accordance with Section 300.519 of Title 34 of the Code of Federal Regulations and Section 1439(a)(5) of Title 20 of the United States Code.

Cal. Educ. Code § 56028(a) (2007).

**[8]** We hold that Hardy was a parent for purposes of the 2007 version of section 56028. This is so because, like the 2009 version of the statute, the 2007 version includes "[a] guardian . . . authorized to make educational decisions for the child." *Id.* § 56028(a)(3) (2007). Hence, Hardy was a parent for purposes of section 48200 from October 10, 2007 to the end of 2008, when the 2007 version of section 56028 was in effect.

3.  *The 2005 Version of Section 56028*

Under the 2005 version of section 56028, a parent includes

(1) A person having legal custody of a child.

(2) Any adult pupil for whom no guardian or conservator has been appointed.

(3) A person acting in the place of a natural or adoptive parent, including a grandparent, stepparent, or other relative with whom the child lives. "Parent" also includes a parent surrogate.

(4) A foster parent if the authority of a parent to make educational decisions on the child's behalf has been specifically limited by court order in accor-

> dance with subsection (b) of Section 300.20 of Title
> 34 of the Code of Federal Regulations.

Cal. Educ. Code § 56028(a) (2005).

**[9]** Hardy did not fall within any of these categories. She did not have legal custody of A.S. A.S. was not an adult pupil. And, for the reasons already given, Hardy was not a "person acting in the place of a natural or adoptive parent," an appointed "parent surrogate" or, during the relevant time frame, a "foster parent." Hardy was therefore not A.S.'s parent for purposes of section 56028 — or section 48200 — from July 2006, when A.S.'s placement at Cinnamon Hills began, until October 10, 2007, when the 2007 version of section 56028 superseded the 2005 version.

CDE concedes that Hardy does not fall within any of the specific definitions of parent included in section 56028(a)(1)-(4) (2005), but argues on policy grounds that the 2005 version of section 56028 should be read to cover any "adult who makes educational decisions for the child" because an "inclusive definition of 'parent' is consistent with the overall policy objectives of special education law." CDE, however, has not pointed to anything in the language, context, purpose or legislative history of the 2005 version of section 56028 that supports such a broad reading. CDE's argument, moreover, is difficult to reconcile with the subsequent history of the statute. The statute identifies specific categories of persons — categories that the legislature has seen fit to add to in ensuing years. Were CDE's construction correct, those later amendments would have been unnecessary.[10]

---

[10]We recognize that, in contrast to the 2007 and 2009 versions of section 56028, the 2005 version uses the word "includes" rather than the word "means," perhaps suggesting that the legislature intended the definition of parent in the 2005 version of the statute to be nonexhaustive. *Cf. Oil Workers Int'l Union, CIO v. Superior Court*, 230 P.2d 71, 106 (Cal. 1951) ("The word 'includes' is not ordinarily a word of limitation but

CDE similarly presents no authority for the proposition that the 2007 revisions merely clarified the 2005 version of the statute. The broad, 2007 version of section 56028 was designed to implement the new, expansive definition of parent under the 2006 federal regulation, 34 C.F.R. § 300.30. *See* 2007 Cal. Legis. Serv. ch. 454 (A.B. 1663) (West) (explaining that the 2007 amendments to section 56028 were enacted to conform section 56028 to the federal IDEA regulations). That regulation did not exist when the California legislature adopted the 2005 version of section 56028. There is therefore little basis to infer that the legislature intended the 2005 version of the statute to embrace the broad meaning embodied by that later regulation.

## C.   Whether CDE Is Responsible for A.S.'s Out-of-State Education

### 1.   *CDE Is Responsible from July 2006 to October 2007*

**[10]**  We have concluded that Hardy was not A.S.'s parent for purposes of section 48200 while the 2005 version of section 56028 was in effect, from July 28, 2006, when A.S. first enrolled at Cinnamon Hills, until October 10, 2007, when the 2007 version of section 56028 superseded the 2005 version. Nor have the parties identified any other person meeting the definition of parent during this period. For this period, therefore, California law failed to make any school district responsible for A.S.'s education. Under these specific circumstances, we hold that CDE is the agency responsible for A.S.'s education at Cinnamon Hills for this time period. *See Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997)

rather of enlargement."); *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005). CDE has presented no authority, however, for the proposition that the California legislature intended the 2005 version of section 56028 to encompass the same broad meaning of parent reflected in the 2007 and 2009 versions of the statute.

("[T]he [State Education Agency] is ultimately responsible for the provision of a free appropriate public education to all of its students and may be held liable for the state's failure to assure compliance with IDEA."); *see also St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998) (holding that the IDEA places primary responsibility on the state educational agency to ensure that the requirements of the IDEA are carried out); *Orange Cnty. Dep't of Educ. v. A.S.*, 567 F. Supp. 2d at 1170 ("[T]here is ample authority to support [Orange County's] claim that, in the absence of a statute delegating responsibility for a student's education to a local entity, the State is, by default, the party most appropriately charged with the task."); 20 U.S.C. § 1412(a)(11)(A) ("The State educational agency is responsible for ensuring that . . . the requirements of this subchapter are met."). Accordingly, Orange County is entitled to reimbursement from CDE for this period of time.

### 2.  *CDE Is Not Responsible from October 2007 to December 2008*

**[11]** We have concluded that Hardy was A.S.'s parent for purposes of section 48200 while the 2007 version of section 56028 was in effect, from October 10, 2007 through December 31, 2008. During this time, Hardy resided in the City of Orange, within the Orange Unified School District.[11] California law accordingly designated an agency responsible for funding A.S.'s education during this period, and CDE is not responsible by default.

### 3.  *CDE Is Not Responsible from January to April 2009*

**[12]** We hold that Hardy was A.S.'s parent for purposes of section 48200 while the 2009 version of section 56028 was in

---

[11]Orange County's complaint does not seek relief against the Orange Unified School District, which is not a party to this action. We express no opinion as to whether such relief is available.

effect, from January 1, 2009 to April 19, 2009. CDE accordingly is not responsible for funding A.S.'s education during this period.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for any further proceedings that may be necessary. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

BYBEE, Circuit Judge, concurring in part and dissenting in part:

We are asked to identify the agency financially responsible for the education of A.S., a minor, from July 28, 2006 through April 19, 2009. I agree with the majority that for the period of July 28, 2006 to October 9, 2007, the California Department of Education ("CDE") is responsible for A.S.'s education, although the majority and I reach that conclusion in different ways. *See* Maj. Op. at 21323. I also conclude that CDE is responsible for A.S.'s education from October 10, 2007 to December 31, 2008, and therefore disagree with the majority's contrary conclusion. *Id.* at 21323-24. And for the period beginning in January 2009, I agree with the majority that the Orange Unified School District is responsible for A.S.'s education because § 48200, when read in conjunction with the current version of § 56028, makes it so. *Id.* Where the majority and I disagree, I respectfully dissent.

The majority and I concur in the basic principles relevant to our analysis. Under California law, the district in which a child's "parent or legal guardian" resides is responsible for

the child's education. Cal. Educ. Code § 48200; *see also* Maj. Op. at 21328. If California law fails to make any school district responsible for a student's education, then CDE is responsible. *See* Maj. Op. at 21341. Beginning in January 2009, the California legislature amended § 56028 to extend its definition of "parent" to several other provisions of the Education Code, including, in certain circumstances, § 48200. *See* Cal. Educ. Code § 56028(b)(2) (2009) ("If a judicial decree or order identifies a specific person or persons under [§ 56028(a)(1)-(4)] to act as the 'parent' of a child or to make educational decisions on behalf of the child, then that person or persons shall be determined to be the 'parent' for purposes of . . . Article 1 (commencing with Section 48200) . . . ."). Thus, beginning in January 2009, § 56028's definition of "parent" expressly applies to § 48200, and I do not disagree with the majority on this point or its implications for the resolution of this case.

But § 56028 has not always contained an express provision that extends its definition of "parent" to § 48200. Rather, the California legislature has made several revisions to § 56028 over the last few years, and two prior versions are relevant here: the 2005 version (effective from October 7, 2005 to October 9, 2007) and the 2007 version (effective from October 10, 2007 through December 31, 2008). Neither of these prior versions of § 56028 extended its definition of "parent" to § 48200. Regardless, the majority believes that § 56028 provides the definition of "parent" for purposes of § 48200 for the entire time period relevant to this case, including the time that the 2005 and 2007 versions controlled. *See* Maj. Op at 21332. It is here that the majority and I must part ways because, absent an express provision such as that found in the current version of § 56028, there is no statutory basis to conclude that § 56028 defines "parent" for purposes of § 48200. Indeed, in my view, an analysis of the Education Code compels a contrary conclusion.

Section 56028 is found within Part 30 of the Education Code, which concerns California's special education pro-

grams. *See* Cal. Educ. Code §§ 56020-56035. Section 48200, on the other hand, is found in Part 27 of the Education Code —the portion of the code containing provisions related to education of primary and secondary students generally. Neither CDE nor the majority, however, has provided a compelling reason as to why a definition that the California legislature expressly made applicable to one part of the Education Code should be imposed on an unrelated, general section of the code. *See Alcala v. City of Corcoran*, 53 Cal. Rptr. 3d 908, 911-12 (Ct. App. 2007) (refusing to impose definition in one code on term used in another where the former "does not reference" the latter, and is "part of a separate . . . chapter").

Moreover, the majority's opinion renders unnecessary the subsequent statutory changes made by the California legislature. The California legislature amended § 56028 in 2009 to extend its definition of "parent" to other portions of the code, including, in specific instances, § 48200. If the majority is correct, and § 56028's definition applied to § 48200 before the 2009 amendment, then the 2009 amendment is superfluous—a conclusion contrary to basic rules of statutory construction. *See Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) ("We try to avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by [the legislature]." (internal quotation marks omitted)).

The majority agrees with this general principle of statutory construction, but reaches a contrary conclusion because it finds Education Code § 56041 dispositive. *See* Maj. Op. at 21332-34. This section states that for students "between the ages of 18 and 22, inclusive, . . . the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible local educational agency, as long as and until the parent or parents relocate to a new district." Cal. Educ. Code § 56041(a). Although, by its terms, § 56041 is limited to students between the ages of 18 and 22, the majority believes that this section "demonstrates

the legislature's intent that the school district responsible for a student's special education is the district in which the student's parent—as defined in section 56028—resides" for students under the age of 18. Maj. Op. at 21333. The majority reasons that the legislative history compels the conclusion that § 56028 applies to § 48200 because reading it in such a way is consistent with the intent of the California Legislature to achieve funding continuity for special education students reaching the age of 18. *Id.* at 21333-34.

The legislative history of § 56041 is informative, but ultimately not dispositive. At first blush, it appears that the majority is correct when it writes that because California sought to "maintain" funding consistency for students after they reach the age of majority, the logical inference is that the definition of "parent" applicable to students below and above the age of majority must be the same. *Id*. But the legislative history of § 56028 reinforces my conclusion. California's Legislative Counsel Digest explains that the 2009 amendment to § 56028 was intended to "*broaden* the purposes for which the definition of 'parent' extends if a judicial decree or order identifies the person who is defined as a parent." 2008 Cal. Legis. Serv. Ch. 223 (A.B. 2057) (emphasis added). This strongly suggests that previous iterations of § 56028 did not do what the 2009 version accomplished, that is, broaden the section's applicability beyond the special education provisions of the California Education Code.

Further, I agree that a consistent rule for the education of students regardless of age might be logical, but the opposite result is not necessarily illogical, and the statutory scheme did not always permit the harmonious reading of the Education Code proposed by the majority. We should be hesitant to impose one: "We cannot insert what has been omitted, omit what has been inserted, or rewrite the statute to conform to a presumed intention that is not expressed." *Lewis v. Clarke*, 133 Cal. Rptr. 2d 749, 752 (Ct. App. 2003). I decline to do just that.

Instead, I would find that the 2005 and 2007 versions of § 56028 do not provide the definition of "parent" for purposes of § 48200. I therefore disagree with the majority to the extent it reaches a contrary conclusion. Because the statutes do not make any other educational entity responsible, I would hold that CDE is responsible for A.S.'s education from July 28, 2006 to December 31, 2008. Thereafter, Orange Unified School District is responsible because, starting in 2009, § 56028 specifically extended its definition of "parent" to § 48200 if "a judicial decree or order" permitted a guardian to make educational decisions on behalf of a child. *See* Cal. Educ. Code § 56028(b)(2). Here, Lori Hardy, A.S.'s court-appointed de facto parent, had authority to make educational decisions on A.S.'s behalf in January 2009.

To the extent that my conclusions depart from those of the majority, I respectfully dissent.

\* \* \* \* \*

Finally, I write separately to voice my disappointment that the California Supreme Court declined our request for certification. *See Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 650 F.3d 1268 (9th Cir. 2011). We are well aware of our duty as federal courts to decide matters of state law in cases authorized by the Constitution and laws of the United States, even where there is no particular federal interest in the resolution of the case. *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) ("With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); *see also New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358-59 (1989). Nevertheless, "almost from the beginning of our history," Congress has limited our jurisdiction in order "to prevent needless friction between state and federal courts." *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940).

*See*, *e.g.*, 28 U.S.C. § 1367(c)(1) (authorizing federal courts to "decline to exercise supplemental jurisdiction" where "the claim raises a novel or complex issue of State law"); 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress . . . ."). We too have created doctrines to avoid interfering with the orderly administration of state law. *See*, *e.g.*, *New Orleans Pub. Serv.*, 491 U.S. at 361 (describing *Burford* abstention: "where timely and adequate state-court review is available [to address complex state administrative procedures], a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies"); *Younger v. Harris*, 401 U.S. 37, 40-41 (1971) (federal courts should abstain from enjoining pending state criminal prosecutions); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) (finding courts should abstain from ruling on constitutional questions until questions of state law are resolved in state courts).

It is more than ironic that, in a case in which there is no discernible federal interest, the California Supreme Court would ignore our invitation to decide a convoluted matter of state law in a dispute between California state agencies. We do not request certification lightly, and it is surprising that California would prefer that we decide such difficult questions ourselves when we have offered to defer to its own courts. *See Bank of Italy Nat'l Trust & Sav. Ass'n v. Bentley*, 20 P.2d 940, 943 (Cal. 1933) (a "holding of the federal court, although entitled to respect and careful consideration, would not be binding or conclusive on the courts of this state"); *Nagel v. Twin Labs., Inc.*, 134 Cal. Rptr. 2d 420, 431 (Ct. App. 2003) ("[F]ederal decisional authority is neither binding nor controlling in matters involving state law." (citation omitted)).

Our fractured disposition shows how helpful the California Supreme Court's input would have been. To date, four federal judges, including the district court, have considered the question of statutory interpretation raised in this case, and we have

reached three different conclusions, most of which are inconsistent with the opinion of California's Administrative Hearing Officer. *See Student v. Orange Cnty. Dep't of Educ.*, No. 2006100050 (Cal. Office of Admin Hearings Oct. 31, 2007) (concluding that Orange County is the responsible agency). Why the California Supreme Court would not agree, or want, to provide guidance in this case is beyond me.